LOYD G. BOWERS, plaintiff in error vs. WILLIAM M. ANDERSON, administrator, defendant in error.

In a parol contract by an agent for the purchase of ninety-two bales of cotton then packed and pointed out, at a stated price per pound, estimating the bales at five hundred pounds each, subject to correction, on weighing, it was also verbally agreed that the seller should haul the cotton to a certain place for the buyer; that if it was burned it should be the loss of the buyer; that the agent need not pay the money, but hold it for the buyer to check on as he might want it, and *no act* was done by either party as to the payment or delivery, and the seller afterwards refused to deliver the cotton, and the agent returned the money to his principal:

*Held,* That this did not make a case of actual receipt by the buyer, or of payment, as required by the 17th section of the statute of frauds, so as to render the seller liable in an action of trover for the cotton. No merely verbal stipulations in the contract, and as part of the contract, are sufficient to take it out of the statute.

Statute of frauds.   Sale.   Part performance.   Delivery. Before Judge ALEXANDER.   Pulaski Superior Court.   April Term, 1872.

Loyd G. Bowers brought trover against William W. Mayo for ninety-two bales of cotton, of the value of $20,500 00. The defendant pleaded the general issue and the statute of frauds.

Pending the litigation the defendant died, and Anderson, his administrator, was made a party.

The facts were as follows: In May, 1862, John M. Kibbee, as the agent of the plaintiff, went to Mayo's residence, at his instance, for the purpose of purchasing some cotton. They agreed upon the terms. The cotton was packed and pointed out, making ninety-two bales, each bale being estimated as of five hundred pounds weight. Any variance from this estimate was to be adjusted when the cotton was weighed. The cotton was to remain where it was at the gin-houses, under Mayo's care, free of storage, until hauled away, at plaintiff's risk. Kibbee stated that if it was burned on the night of the sale, it would be plaintiff's loss. The price agreed upon was

seven and a half cents per pound.   Kibbee offered the money to Mayo, but the latter requested him to keep it subject to his check, as he did not like to keep so much money at home. The plaintiff was at once notified by Kibbee of the purchase, and had the cotton insured.   The cotton was sampled before the purchase and would class "low middling."   It was also agreed that if the cotton should remain in the possession of Mayo until his crop was laid by, he would haul it to Hawkinsville free of charge, otherwise the plaintiff was to pay for the hauling.   Upon demand, Mayo refused to deliver the cotton.   Kibbee returned the money which was to be paid for it to the plaintiff.

The jury returned a verdict for the defendant.   The plaintiff moved for a new trial upon the following, amongst other grounds:

1st. Because the verdict was contrary to the law and the evidence.

2d. Because the Court erred in charging the jury "that the general rule of law applicable to the title to personal property under a sale, is this:   Where the plaintiff claims title to goods under a sale, and a question is made as to the time when the property passed, it will be material for him to prove that everything that the seller had to do was already done, and that nothing remained to be done, but to take away the specific goods.   They must have been weighed or measured and specifically designated, and set apart by the vendor, subject to his control, the vendor remaining at most a mere bailee."

The motion for a new trial was overruled and the plaintiff excepted.

S. HALL; HANSELL & HANSELL; JACKSON, NISBET & BACON; C. C. KIBBEE, for plaintiff in error.

LANIER & ANDERSON, for defendant.

Bowers *vs.* Anderson.

TRIPPE, Judge.

It is not necessary to the decision of this case to determine whether the charge of the Court was or was not strictly accurate and correct. There are many decisions going that far and which state the principle as given by Judge ALEXANDER: Hanson *vs.* Meyer, 6 East. R., 614; Wallace *vs.* Breeds, 13 *Ibid.,* 522; Simmons *vs.* Swift, 5 B. & C., 857; Barrett *vs.* Goddard, 3 Mason, 112; Allman *vs.* Davis, 2 Iredell, 12; and Mr. Selwyn affirms the rule to be as drawn from Whitehouse *vs.* Frost., 12 East., 614, that if anything remains to be done on the part of the seller as between him and the buyer to ascertain the price, quantity or individuality of the goods before delivery, a right of property does not attach in the buyer.

The rule as stated has been quite strongly questioned by a a writer in 1 American Law Review, 413–431 and authorities quoted, and reasons given why, as it is claimed, the principle has been too broadly announced. I am not inclined to join issue with the positions assumed in the article referred to nor is it necessary that it should be done. It may be true, that there may be cases where the property passes without a delivery—without the weight being ascertained or without the aggregate price being ascertained, but it must appear to be the intention of the parties; the goods must be ascertained, there must be a valuable consideration and the contract must satisfy the statute, either by part or entire payment, or earnest, or by acceptance and delivery of part or the whole, or by a writing duly signed. But the question here turns on another point.

This case was founded on a contract alleged to have been made in 1862, before the Code went into operation, so that it is to be decided under a construction of the 17th section of the statute of frauds. It is not intended by this to intimate that the case would be different if it arose under the provisions of the Code, but to assert it to be just what it is, a case controlled by the statute of frauds. The 17th section of that statute re-

quires that a contract for the sale of goods for the price of £10 or upwards, in order to convey the title to the goods, must be accompanied with proof, either that part of the goods sold has been accepted and *actually received*, or that something has been given in earnest to bind the bargain, or in part payment, or that a note or memorandum, in writing, of the bargain must be signed by the parties to be charged by the contract or their agents : Benjamin on Sales, 68. The intent of the statute was to prevent the enforcement of contracts above a certain value, unless the defendant could be shown to have executed the alleged contract by partial performance, as manifested by part payment, or part acceptance, or unless his signature to some written note or memorandum of the bargain—not to the bargain itself—could be shown : *Ibid.*, 147. Or, in other words, the rule may be said to be that, in order to make such a parol contract binding, so as to pass title, there must be something beyond the mere words of the contract. To hold that the statute could be satisfied by the parties to the contract verbally stipulating in the contract and as part of it, that the goods should be considered as held by the seller as bailee for the purchaser, or that the price should remain with the buyer as the depositary of the seller, would destroy its whole virtue. It would allow a contract to be enforced which at last would only exist in *words*, the words that made it, without an *act* by either party towards its performance, or without a line of writing to prove it. The statute requires one or the other.

It has been often stated as being now finally determined that the goods may remain in the possession of the seller, *if he assume* a changed character, and yet be actually received by the buyer ; that it may be agreed that the seller shall cease to hold as owner, and shall assume the character of bailee or agent of the purchaser, thus converting the possession of the seller into that of the buyer through his agent. This is so laid down by Mr. Benjamin in his work already quoted from, page 130.

On examining the cases referred to, it will be found that

there was something in nearly every one besides the mere *verbal* agreement of the parties that the seller should assume a changed character.   There was an *act* done or performed by one or the other of the parties, or by both, which formed a marked feature in the transaction.

The first case referred to is Chaplain *vs.* Rogers, 1 East., 195, where it was held that a stack of hay remaining on the vendor's premises was actually received by the purchaser; but this was on the ground that the buyer had re-sold a part of it to another person, who had taken away the part so purchased by him.

In Beaumont *vs.* Brengeri, 5 C. B., 201, the defendant had bought a carriage, which remained in the plaintiff's shop by request of defendant.   The plaintiff had a verdict, but it was in evidence. that defendant had ordered certain alterations made—had sent for the carriage and took a drive in it, after telling plaintiff he intended to take it out a few times so as to make it pass for a second hand carriage on exportation.   The decision was put on the ground that the defendant had assumed to deal with it as his own, had accepted it, although it had been sent back and left in plaintiff's shop.

So it will be found in most, if not all, of the cases which are referred to in support of the broad proposition, as stated above, that there was something more than a mere verbal agreement as to the character in which the seller was to hold the property.   The case generally cited as the leading one on this point is Elmore *vs.* Stone, 1 Taunt., 458.   There the purchaser of horses from a dealer left them with the dealer to be kept at livery for the buyer.   Sir JAMES MANSFIELD, delivering judgment, held that as soon as the dealer had consented to keep the horses at livery, his possession was changed, and from that time he held, not as owner, but as any other livery stable keeper.   In this case, the fact was that the seller kept both a sale and a livery stable, and in compliance with the request of the buyer, transferred the horses from the sale stable to the livery stable.   It is true it is stated in the judgment that this fact did not affect the case; but strike it out,

and it is difficult, if not impossible, to sustain the decision on principle or authority. And the case has been doubted in Howe vs. Palmer, 3 B. & A., 324, and Proctor vs. Jones, 2 C. & P., 534, and subsequent decisions have virtually overruled it.

The case of Walker vs. Nussey, 16 M. & W., 302, was this: An agreement for the purchase of goods, exceeding £10 in value, was made, with the understanding and as part of the contract, that the vendor should deduct from the price the amount of a debt due by him to the purchaser. The vendor then sent the goods to the purchaser, with an invoice, charging him with the price, £20 18s. 11d., under which was written, "By your account against me, £4 14s. 11d." The purchaser returned the goods as inferior to sample. It was contended on behalf of the vendor, who brought an action for goods sold and delivered, that this credit of £4 14s. 11d. was a part payment of the price, sufficient to take the case out of the statute: Held, Not to be so. Platt, B., said, "You rely on part of the contract itself as being part performance of it." Pollock, C. B., said, "Here was nothing but one contract; whereas, the statute requires a contract, and if it be not in writing, something besides." Parke, B., and Alderson, B., also added statements equally as clear and strong, all showing their unanimous opinion that no mere words in a contract, and which are part of it, will satisfy the statute. Indeed, if that could be done, the statute for all beneficial purposes might as well be stricken from the book.

I will refer to but one more case—that of Shindler vs. Houston, 1 Comstock, 261. It seems to have been thoroughly considered, having gone up to the Court of Appeals of New York, from a decision of the Supreme Court, which last is reported in 1 Denio, 48. The judgment of the Supreme Court was reversed, BRONSON, Judge, who had presided as one of the Judges in the Supreme Court and who concurred in the first decision, now concurring in overruling it. It was held, "that to constitute a delivery and acceptance of goods such as the statute requires, something more than mere words

Bowers *vs.* Anderson.

is necessary. Superadded to the language of the contract there must be some *act* of the parties amounting to a transfer of the *possession* and an acceptance thereof by the buyer." GARDNER, Judge, said, "The declarations relied upon as evidence of a delivery and acceptance, constitute a *part* of the *contract*, and of course are obnoxious to all the evils and every objection against which it was the policy of the law to provide." BRONSON, Judge, said, "Mere words of contract, unaccompanied by any act, cannot amount to a delivery. To hold otherwise, would be repealing the statute." GARDNER, Judge, said, "So far as I have been able to look into the numerous cases that have arisen under the statute, the controlling principle to be deduced from them is, that when the memorandum is dispensed with the statute is not satisfied with anything but unequivocal acts of the parties; not mere words that are liable to be misunderstood and misconstrued, and dwell only in the imperfect memory of witnesses. The question has been, not whether the words used were sufficiently strong to express the intent of the parties, but whether the *acts* connected with them, both of seller and buyer, were equivocal or unequivocal." Numerous other decisions are to the same effect, but the above with the extracts given are sufficient.

We find nothing in the record which shows any contract between these parties but a verbal agreement. There is not an *act* of either party proven in connection with that contract, showing performance or part performance—nothing showing payment or delivery and acceptance, except what is part of the *verbal* contract itself, and which was done *by words*. The purchaser, it is true, insured the cotton, but that was an act of his own, not by the direction or knowledge of the seller.

It is not necessary to notice, in this connection, the doctrine of constructive delivery, such as where the seller by some act relinquishes his dominion over the property and puts it in the power and control of the buyer. For instance, the delivery of the key of a store-room or warehouse, or other place where the goods are deposited, or directing a bailee who has the goods in possession to deliver them to the buyer, and which,

by the assent of the bailee and the purchaser, are thence held as the property of the new owner. In such cases there is, in addition to the words of the bargain, an act of both parties, by which the dominion over the goods is transferred from the seller to the buyer. But here there was no delivery, actual or symbolical.

Upon the whole, whether the charge of the Court was or was not strictly accurate, there is no evidence in the record to take the case out of the statute, and the verdict was a legal necessity under the testimony.

Judgment affirmed.