## DANIEL v. HANNAH.

1. A ground in a motion for a new trial, complaining of alleged error in admitting testimony, can not be considered by this court when it does not appear what objection was made by the movant to the introduction of the evidence.
2. In the trial of a case involving title to personal property, where both litigants claim under the same person, one as a vendee under a contract of sale, and the other as a widow claiming a year's support, the mere declarations of such person made in his own interest after he had parted with possession under his contract, and not in the presence of the vendee, are not admissible in evidence against the latter.
3. Where a debtor verbally agrees to sell to his creditor a definitely specified number of bales of cotton of the value of over fifty dollars, to be credited on an account due by the former to the latter at the market value of the cotton at a certain time and place, there is a complete acceptance and delivery of the property sold, within the meaning of § 2693 (7) of the Civil Code, when the debtor moves the cotton to a public place designated by the creditor and agreed upon by the parties in their contract of sale.
4. The verdict in this case was not contrary to evidence, and there was no abuse of discretion in overruling the motion for a new trial.

Submitted October 21, — Decided November 26, 1898.

Appeal. Before Judge Butt. Talbot superior court. March. 17, 1898.

*Persons & Son,* for plaintiff.

*J. H. McGehee* and *J. A. Cotten,* for defendant.

LEWIS, J. To the return of appraisers appointed to set apart· a year's support to the widow of R. M. Daniel, objections were filed by Hannah, that certain cotton embraced in the return of· the appraisers did not belong to R. M. Daniel at the time of his death, and that it was then and is still the property of caveator, and not a part of the estate of R. M. Daniel. The case was by consent appealed from the court of ordinary to the superior· court, and the trial in the latter court resulted in a verdict in favor of the caveator. The applicant for a year's support moved. for a new trial, which was refused, and she excepted.

1. The first ground in the amended motion for a new trial is, that the court erred in permitting the caveator to testify, over· objection of applicant's counsel, that he bought the cotton in. dispute from the husband of the applicant, the value of the cot-· ton being over $50. It does not appear from the motion upon. what ground this objection was based at the time the testimony· was admitted. It is true the reason for the objection is sug-· gested in the motion by the words, "the value of the cotton be-· ing over $50," but it nowhere appears that such objection was· actually made when the testimony was objected to before the· court below. Without intimating that there was anything in this ground, even if the question had been properly made, we simply decide, under repeated rulings of this court, that we can. not consider it as presented by the record.

2. Another ground of alleged error in the motion is, that the· court erred in ruling out the testimony of certain witnesses who· were not interested in the suit, as to what R. M. Daniel, the de-· ceased husband, said to witnesses in the absence of Hannah, the caveator, concerning the cotton in dispute, and yet permitting· the caveator to testify about his transaction with deceased in buying the cotton in dispute. There was manifestly no error· in excluding this testimony, as it was merely hearsay, being the· declarations of a deceased party to the contract, not even made; under oath nor in the presence of the other contracting party..

3, 4. It was further objected that the court erred in charg-
ing the jury, that if they believed from the evidence that R. M.
Daniel sold the cotton at Reeves's ginnery to Hannah, and in
pursuance of that sale moved the cotton to a place designated
by Hannah, to be credited on R. M. Daniel's account at the price
it would bring on November 10, 1896, that was a sale, and title
to the cotton was in Hannah. And again, because the court
erred in refusing to charge, at the request of counsel for appli-
cant, that as no earnest-money was paid, and no receipt for the
cotton was given by Hannah to Daniel at the time of the alleged
sale, Hannah should have had actual possession of the cotton
to have made it a legal sale of the cotton. There was testi-
mony by one witness to the effect that he was present and heard
a conversation between Daniel and Hannah at Hannah's store
in Thomaston on October 10, 1896; that Daniel told Hannah
that he had hauled seven bales of cotton to Mr. Reeves, that it
belonged to Dr. Hannah, and, if Hannah wished it, he would
haul the cotton to Thomaston for him; that the cotton was paid
to Hannah to go on Daniel's store account, and the agreement
was that Hannah should allow Daniel the highest market price
in Thomaston for the cotton on November 10, 1896; that is,
Daniel's account with Hannah should be credited with the value
of the seven bales of cotton at its highest market value at that
time. There was considerable testimony introduced in behalf
of the applicant for a year's support, conflicting with the evi-
dence in behalf of the caveator, and tending to establish the
fact that no such contract was made as claimed by him, and no
credit was upon the books of the caveator at the time of Dan-
iel's death. The books of Hannah were introduced, showing a
credit on Daniel's account of the seven bales of cotton on the
day Hannah said he purchased it. Hannah testified that the
credit was there on that date. Two witnesses testified that they
examined Hannah's books after Daniel's death, and found no
such credit on Daniel's account. The price fixed in the con-
tract of purchase was the highest market price in Thomaston
on November 10, 1896. Before that date, however, Daniel had
died, and the appraisement for the year's support of the widow
had been returned. Reeves, the owner of the ginnery, swore,

that he ginned the cotton in dispute for Daniel, and Daniel left it at his ginnery; that he kept it for Daniel, and Hannah said nothing to witness about the cotton prior to Daniel's death. This witness further swore, "Soon after the cotton was ginned Daniel hauled it and placed it on the road in front of my house."

The charge of the court complained of is evidently based upon the theory of the caveator's case, that the facts he relied on for a recovery constituted an actual delivery and acceptance of the goods sold. Counsel for plaintiff in error contended that there was no such delivery and acceptance as is contemplated in § 2693, par. 7, of the Civil Code, there being no testimony that the caveator actually received the goods in his possession, or that they had been delivered by the vendor to any one for him. The paragraph above cited provides, that any contract for the sale of goods, etc., to the amount of fifty dollars or more, except the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, is void. It is true that what would constitute good delivery in ordinary contracts of sale would not necessarily be sufficient in that class of contracts falling within the above statue of frauds. But it is difficult to conceive how a delivery can be more complete than it is when dominion and control over the property is relinquished by the vendor, and its absolute custody, and the unconditional power of disposing of the same, is transferred to the vendee. While Reeves testified he held the cotton for Daniel, yet it does not appear from his testimony, or elsewhere in the record, that there was any understanding between him and Daniel after it was moved from the ginnery to the roadside that Reeves should continue to keep the custody of the cotton for Daniel's benefit. On the other hand, according to Hannah's testimony, it was moved from the ginnery by virtue of the special contract between him and Daniel, designating a particular place for delivery. This place, it seems, was not even on the premises of a third party, but on a public highway which ran by or through the land of Reeves. This was a public place, and hence as accessible to one party as the other. By transferring it there, the vendor relinquished

all dominion and control over the property, and the vendee,. and he alone, thereby acquired the right to dispose of it as he saw proper.　We think the delivery was as effectual and complete as if, under the contract, it had been placed by the vendor upon the platform of a railroad company, or even upon the premises of the vendee himself.　There was also manifestly an acceptance of the cotton by the vendee.　The particular thing sold was designated and agreed upon, and nothing whatever remained to be done by either party, after its delivery at the place agreed upon, to confirm the sale. ' No right remained in the vendee to reject the goods bought, either on account of quantity or quality.　The fact that the price of the cotton was to be ascertained subsequently by the condition of the market at a particular place does not affect the validity or completeness of the sale.　*Loud* v. *Pritchett*, 104 *Ga.* 648.　It would seem from the decision in the case of Tansley v. Turner, 2 Bing. N. C.. (Eng. Com. Law Rep.) 288, and Cooper v. Bill, 3 H. & C.. (Court of Exchq.) 722, that if the goods at the time of the bargain are on the land of a third person (such person not having the custody of them as bailee), or are in some public place to which buyer and seller have equal right of access, the possession, as well as the title, may be transferred by the mere agreement of the parties to that effect.　1 Beach on Contracts, 668–9. A fortiori would such title and possession follow where the goods are transported by the vendor to a public place where they were to be delivered in pursuance of the contract of sale.

The authorities cited by plaintiff in error from decisions of this court we do not think at all in point.　The case of *Lloyd* v. *Wright*, 25 *Ga.* 215, simply decides that where the buyer continues to have the right to object either to the quantum or the quality of the goods, there has been no acceptance and receipt within the meaning of the statute.　In *Denmead* v. *Glass*, 30 *Ga.* 637, it was decided that a delivery of goods to a railroad company, under the statute of frauds, is not a delivery to the purchaser; the company not being the agent of the buyer "to receive and accept" the same.　There is no question of agency in the case at bar, and, as before seen, there was, under the contract, no right reserved in the vendee to reject the goods for

any reason. In *Bowers* v. *Anderson*, 49 *Ga.* 143, it appeared that it was agreed that the seller should haul the cotton to a certain place for the buyer; that if it was burned it should be the loss of the buyer; that the agent need not pay the money, but hold it for the buyer to check on as he might want it, and that no act was done by either party as to the payment or delivery; that the seller afterwards refused to deliver the cotton, and the agent returned the money to his principal. It was very properly held in that case, that there was no actual receipt by the buyer, or payment, as required by the 17th section of the statute of frauds. In *Gunn* v. *Knoop*, 73 *Ga.* 510, there was an attempt to sell cotton which was stored in a warehouse by the vendor. There was nothing done in pursuance of the contract, except to weigh the cotton, and agree upon the price, the purchaser indorsing on the bill containing the amount of cotton, and its price, "O. K.," and signing his name. The cotton was to remain in the warehouse until next morning. It was burned that night. It was held that the contract of sale was not complete, as the actual possession remained in the seller. To the same effect is the ruling in *Sparrow* v. *Pate*, 67 *Ga.* 352. From the opinion of the court it will be seen that the decision in that case was based upon the fact that the price was not paid, and there was no evidence of delivery, the same remaining in the warehouse where it was when the contract was made. A marked distinction between the facts in the cases cited and those in the case we are now discussing is apparent from the fact that, under this contract, neither the vendor nor his bailee retained possession of the property, but, under the testimony, the same was actually taken by him from the custody of his bailee and delivered to the vendee at a place where no one had a right to its possession or control except the vendee himself. There was a conflict in the testimony as to when the credit for the cotton was placed by the vendee on his books, but we think this entirely immaterial; for, under his contract, he could not with any degree of certainty or accuracy have given the credit until he ascertained the condition of the market on November 10th, which was after other witnesses had inspected his books. This credit actually appeared upon his books at the time of the trial.

Construing the charge of the judge, and his refusal to charge, in the light of the real issue in this case, we think there was no error committed in the rulings complained of. The real contest and the material issue of fact for the jury to pass upon was whether or not the contract claimed by the caveator had been made and executed. Upon this, though there might, in the opinion of this court, have been a preponderance of evidence in favor of the applicant, yet the jury saw fit to accept as the truth the testimony introduced in behalf of the caveator; and this testimony being sufficient to support the verdict, we will not interfere with the discretion of the trial judge in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*