## 2147.  CASE THRESHING MACHINE CO. *v.* COOK.

1. Where an engine has been sold under a written contract, which stipulates that if, after ten days' trial of the engine by the purchaser, it shall fail to fulfil the warranty contained in the contract, he shall at once give notice to the seller and the agent through whom the engine was received, stating how it failed to fulfil the warranty, and, if it can not be made to fulfil the warranty, it is to be returned by the purchaser, free of charge, to the place where received, and the seller notified thereof, who shall, at his option, substitute another, or treat the contract as rescinded and refund all cash and notes, and that failure by the purchaser to comply with these terms shall be conclusive evidence of fulfilment of warranty by the seller, who shall be released from all liability thereunder, *held,* that upon failure of the engine to satisfy the warranty, or failure of the seller, on notice, to make it do so, a notice by the purchaser to the seller and his agent, that the engine is not doing satisfactory work and is held subject to the order of the seller, is not such a return of the engine as would be a compliance with the contract, and does not relieve the purchaser from liability for the price of the engine, where there is no waiver by the seller of the terms of the contract. This would be especially true if the purchaser, after making the complaint and giving the notice, continued to keep the engine in his possession and to use it.

2. A statement by an agent of the seller of an engine, that the seller "never takes back an engine," made to the purchaser twelve months after the purchaser had failed to comply with the contract as to the return of the engine, and where he had continued to use the engine during this entire period and had greatly damaged it in such use, and where the engine was not returned by the purchaser to the place where received, and no offer was made to so return it, could not be deemed a waiver by the seller of any of his rights under the contract; and especially would this be true where this agent had no authority to waive any of the terms of the contract, but was only charged with the special duty of collecting the purchase-price due for the engine.

3. Where a purchaser of a steam-engine has subjected it to trial and has ascertained all that the test can disclose as to the ability of the engine to satisfy the express warranty under which it was bought, if it does not satisfy the warranty he can reject it altogether and rescind the sale. If, however, after this he keep the engine and makes use of it for over a year and until suit is brought for the purchase-price, he is then precluded from rescinding the contract. Having elected to keep the engine and use it for his own advantage and benefit until it had been greatly damaged in the use, both law and equity demand payment.

Complaint; from city court of Monticello—Judge Thurman. September 6, 1909.

Argued December 7, 1909.—Decided April 19, 1910.

*Doyle Campbell, Carey, Upham & Black,* for plaintiffs.

*Greene F. Johnson,* for defendant.

HILL, C. J. The plaintiff in error sued the defendant on a promissory note for $475 and interest. The defendant admitted the execution of the note, and pleaded total failure of consideration, resulting from breach of express warranty. The note was given for a balance due on the purchase-price of one 12 horse-power, portable, wood-burning engine, the purchase-price being $675, of which the defendant paid $200 on receipt of the engine.

The defendant asked judgment against the plaintiff for the $207, and for $40.53 paid by him as freight. The verdict was for the defendant for the full amount claimed, $247.53, with interest. The plaintiff's motion for a new trial was overruled.

The evidence was as follows: An order for the engine, signed by the defendant, stated that the engine would be received subject to the following warranty: "The above engine is warranted to be made of good material, durable with good care, to do as good work under the same conditions as any made in the United States of equal size and rated capacity, if properly operated by competent persons with sufficient steam, or horse-power, and the printed rules and directions of the manufacturers intelligently followed. If by so doing, after a trial of ten days by the purchaser, said machinery shall fail to fulfil the warranty, written notice thereof shall at once be given to the J. I. Case Threshing Machine Company at Racine, Wisconsin, and also to the agent through whom received, stating in what parts and wherein it failed to fulfil the warranty, and the company will send a competent person to remedy the difficulty, the purchaser rendering necessary and friendly assistance, said company reserving the right to replace any defective part or parts, and then, if the machinery can not be made to fulfil the warranty, the part that fails is to be returned by the purchaser, free of charge, to the place where received, and the company notified thereof, and at the company's option another substituted therefor that shall fill the warranty, or the notes or money for such immediately returned and the contract rescinded to that extent, and no further claim made on the company. Failure so to make such trial or to give such notice in any respect shall be conclusive evidence of the fulfilment of the warranty on the part of said company, and that the machinery is satisfactory to the purchaser, and the company shall be released from any liability under the contract. . . Failure . . to comply with any of the conditions of this warranty on the

purchaser's part, . . or any abuse, misuse, unnecessary exposure of machinery, or waste committed or suffered by the purchaser, discharges the company from all liability whatsoever. . . . In consideration of the expense incurred by the company; soliciting, investigating, and taking this order, the purchaser promises and agrees to pay all freight charges on said machinery from the factory and fifteen per cent. of the price above stipulated, in cash, in case he should cancel this order or decline to accept said machinery." This order was accepted by the plaintiff, and the engine delivered to the defendant at Pope's warehouse at Monticello, Georgia, January 28, 1907. The defendant testified that after the engine had been operated in the sawing of twenty thousand feet of lumber, it broke down; and on February 11, 1907, he wrote to the plaintiff of the trouble with the engine. On February 20, 1907, he again wrote to the plaintiff, saying, "Your engine has given out, the steam valve is worn so badly, and the face of the steam-chest also worn so badly in eight days run, that I had to shut down. I call on you now to make good your guaranty, or consider the engine yours." A man was sent by the company to repair the engine, and, after inspection, a new valve was sent. This was in May, 1907. After being repaired, the defendant again used the engine, sawing an average of 3,000 feet of timber a day until July, 1907, when it again broke down from the same cause. The defendant went at once to Atlanta to see the company's agent, and complained of the defect, and then stated to the agent that he would not pay for the engine, unless it was fixed. The defendant testifies that from that time he heard nothing from them about the engine, until November, when he received a dun from the company, and he wrote that he would not pay for the engine unless they would get it in good running order. In January, 1908, a lawyer representing the company came to see him, and he told the lawyer that he would not pay for the engine; that the company had agreed to take the engine back or give him his money back, and that he would give him what he had paid for the engine, if he would give him back his note. This lawyer said he would make the engine good, but he never did. He told the lawyer, if he did not put the engine in good condition, "this is your engine." In reply the lawyer remarked, "The Case people never take back an engine." When this conversation was had, "the engine was down

on the creek where it had been used pulling the saw-mill." The defendant testified, "I am using the pumps of this engine now. I have taken off the steam-gauge and injector. The pump is worth $10 or $15." After the second cylinder was put on in May, he sawed 80,000 feet of lumber with the engine. He "could not swear that the engine was oiled properly. If the engine is not properly lubricated, great friction will be caused by the steam in the steam chest, which will cause the valve seat to wear out. . . The engine remained down on the creek where I sawed last until I was served with notice of this suit; then I brought it back to Machen and placed it back of Bullard Brothers' store. The whistle was broken by the falling of some planks, . . the grates are not in the engine; they are gone. The boys tore up the ash-pan." The plaintiff contended that the engine was as represented and the trouble was altogether due to improper method and the use of incompetent men in operating it. The motion for a new trial is based on the general grounds and numerous special grounds. The view we entertain of the merits will indicate our opinion of the special assignments.

1. The verdict for the defendant was not authorized by the evidence and the law. His own testimony shows that he did not comply with the conditions of the contract, which were binding upon him. If the engine did not work after a trial of ten days, and if the plaintiff, on notice of the defect, exercised its option of remedying the defect, and still the engine did not fulfil the warranty, it was the duty of the defendant to return this defective part to the plaintiff, "to the place where received." He did not do so. The letters to the plaintiff in which the defendant said that unless the plaintiff made the engine good, "the engine is subject to your order," or "I call on you now to make good your guarantee, or consider the engine yours," were in no sense a compliance with this condition. In the case of *Malsby* v. *Young,* 104 *Ga.* 205 (30 S. E. 854), the warranty was almost identical with that under consideration, and the Supreme Court held: "Where a contract gives to the purchasers of personalty sold to them under an express warranty the right, upon compliance with specified conditions, to return the same to the sellers by delivery at a designated place free of freight charges, a mere notice to the latter that the property is held subject to their order is not a compliance with the terms of the contract." There the property was an engine, and, as said, the warranty was sub-

stantially in the same words. In *Dickey* v. *Winston Cigarette Machine Co.*, 117 *Ga.* 131 (43 S. E. 493), the contract was for the sale of a cigarette machine, and the purchaser had four months in which to try the machine to ascertain if it would make cigarettes as warranted, and if not, he had a reasonable time, after the expiration of four months, to return the machine to the plaintiff at Winston, N. C. It was held that "nothing less than an actual return of the property would be a compliance with the terms of the contract." There a notification from the purchaser to the seller by letter that the machine was not doing satisfactory work and that it was held "subject to the order of the seller" was held not sufficient. And in *McCormick Harvesting Machine Co.* v. *Allison*, 116 *Ga.* 445 (42 S. E. 778), where the contract was in totidem verbis as in the case sub judice, and the facts relied upon as a defense almost identical, the court held that "upon failure of the machine to work well and failure of the seller, upon proper notice, to have it put in order, a notice by the purchaser to the agent of the seller that the machine was held subject to the seller's order was not a compliance with the terms of the contract."

Of course, it can not reasonably be insisted that the statement by the purchaser to the lawyer of the seller in January, 1908, one year after the purchase of the engine, that "this is your engine," was a compliance with the provision of the contract, that it was "to be returned by the purchaser free of charge to the place where received." Nor was the return of the engine by the purchaser, when sued on the note, to Machen, where it was put in the back of Bullard Brothers' store, a compliance with the contract; for it was to be returned "to the place where received," and that place was at Pope's warehouse in Monticello. Besides, it could hardly be expected that the plaintiff would be willing to receive the engine in the swamp, badly dismantled and misused, or at Machen, in the condition of abuse and injury caused by defendant; and we do not think there was any waiver by the seller of this condition of the contract. The only evidence relied upon as constituting a waiver was the statement made to the defendant by the lawyer of the plaintiff, more than six months after the engine had "broken down," and when it was down on the creek, badly abused and dismantled, that "the Case people never take back an engine." According to the defendant's own testimony, when this statement was made he

was using the engine, or parts of it, and had been using it since July. It could hardly be expected that the "Case people" would take back the engine when tendered, where tendered, and in the condition in which it was. Neither justice, law, nor equity required that they should do so; and to claim that a failure to do so under the circumstances constituted a waiver of the terms of the contract on this subject would be a gross perversion of the doctrine of waiver. Besides, the attorney in question went to collect the note for the engine, and not to take back the engine; and there is no evidence that he had any right to waive any of the terms of the contract, and the express language of the contract negatives the authority of the agent to make any alteration in its terms.

2. For other reasons the verdict for the defendant is without evidence to support it, and unauthorized by both the terms of the contract and the law. According to the testimony of the defendant the engine, while in his possession and while operated by him, had been badly abused and misused, and parts taken off and carried away. Under the contract this conduct of the plaintiff discharged the company from all liability whatsoever. Again, the defendant had in fact used the engine for over a year, he had sawed over 100,-000 feet of lumber with it, and was still using it when suit was filed, or at least parts of it. How can a verdict finding a total failure of consideration be sustained, under this evidence of the defendant himself. The buyer of this engine, after buying it, and finding that it was not satisfactory, had the election to return it "to the place where received," and demand the return of his note and the cash he had paid. He did not do this, but continued to keep the engine and use it for over a year. This conduct on his part can bear but one just construction under the law. He is precluded from the inconsistent defense of rescission, and reclamation of that which he had paid on the purchase-price. He elected to keep and use the engine, notwithstanding its defects. He should be required to pay for it. Fox *v.* Wilkinson, 133 Wis. 337 (113 N. W. 669, 14 L. R. A. (N. S.) 1107). *Judgment reversed.*

POWELL, J., concurring specially. I think that while there may have been some waiver of strict compliance with the terms of the contract in this case (see *McDaniel* v. *Mallary Bros. Co.*, 6 *Ga. App.* 848 (66 S. E. 146)), yet, under the general law, the plaintiff was entitled to recover.