WALKER & ROGERS *v.* MALSBY COMPANY.

1. The purchaser of a steam engine accepted a limited warranty, to the effect that if any part was found defective the seller agreed to supply such part as was found defective within one month after the engine was put in operation; and also, if the engine did not perform well because of general structural condition, the seller agreed to accept a return of the engine; and the buyer covenanted that the seller should not be liable to claims for damages or failure of consideration, unless such claims were made by registered letter to the seller within ten days after starting the engine. The eccentric rod broke in the operation of the engine, and on verbal notice the seller authorized its repair at his expense; the rod again broke, and the seller, upon verbal notice, again authorized its repair at his expense. Afterwards the eccentric rod repeatedly broke, and the purchaser then discovered that this frequent breaking was due to defective construction in the engine, but never notified the seller, according to the terms of the limited warranty, that such was the case, or that he would claim damages or failure of consideration. *Held,* that as by the terms of the warranty in the contract of sale a failure to give ten days written notice, by registered letter, of the general defective condition of the engine, was made a condition precedent to the buyer's claiming damages for a breach thereof, the purchaser was precluded by his contract from pleading such damages.

(a) Though the seller acted on a parol notice as to the defective eccentric rod, and authorized a duplicate thereof to be purchased at his expense, yet such conduct would not estop the seller from setting up the buyer's waiver of liability for damages resulting from a breach of the warranty as to the general defective condition of the engine upon failure to give the contractual notice.

2. A parol agreement between the parties to an executed contract of sale covering several articles, that the seller would accept a return of one of the articles of a greater value than $50, which was stored under a shed on the buyer's premises, at a stated credit on the notes given for the whole, is a contract of resale by the vendee to the vendor. Such parol contract of resale is invalid under the statute of frauds.

(a) The mere stipulation in the contract of resale that the article should remain on the premises of the vendor at the place where it was stored, until sold by the vendee, did not amount to an act of delivery and acceptance which would bring the transaction within the exception of the statute.

APRIL 21, 1910.

Complaint. Before Judge Gilbert. Marion superior court. April 21, 1909.

Walker & Rogers entered into a written contract with Malsby Company for the purchase of an engine and shingle-mill and certain other machinery for the sum of $1,578. They paid one hundred dollars cash, and gave their four notes, due in three, six, nine, and twelve months for the balance. In the written contract

of sale the seller warranted that the engine was manufactured of good material and good workmanship, and that by proper management it would perform well; and if the engine did not perform well because of general structural defect, the seller agreed to accept a return of the engine; and the buyers covenanted that the seller should not be liable to claims for damages or failure of consideration, unless such claims were made by registered letter to the seller within ten days after starting the engine. The seller further covenanted that if any part of the engine was found defective after one month's trial, it would furnish a duplicate of the part free of charge, if the defective part was shown to it within the thirty days, but no defective part was to condemn other parts or the whole. With respect to the shingle-mill the seller covenanted that in case of a defect in the material or workmanship, it would make the same good if notice of the defect was given by registered letter within ten days from the date of delivery of the mill; and upon failure to give the ten days notice by registered letter, all claims whatever were expressly waived by the purchasers.

Suit was brought by the seller against the buyers upon the notes. The written contract of sale was made a part of the petition, and the notes were alleged to have been given in consideration of the purchase of the machinery, according to the terms of the attached contract. The defendants pleaded failure of consideration as to the engine, alleging that it was purchased under an express warranty that "it is manufactured of good material and good workmanship, and that by proper management it will perform well," and that "if they [the sellers] are not able to make it perform well, and the fault is in the engine, it is to be taken back and payments refunded." As a breach of this warranty it was averred, that the defendants exercised due care and skill in the use of the engine, and when they sought to use it the eccentric rod broke, whereupon they immediately, and within less than ten days, personally notified the seller of the fact, which authorized them to procure a new eccentric rod, which was done; that after running the engine a few days the eccentric rod again broke, and the defendants had it mended, and in a short time it broke again, when the defendants personally notified the plaintiff of the fact, and it authorized the defendants to have it repaired at the plaintiff's expense, which was done, and in a short time the eccentric rod again broke and repeatedly

broke, and they had it repaired; that without a perfect opera-
tion and working of the eccentric rod the engine would not per-
form well; that the failure of the engine to perform well was
due to the defective material and workmanship of the engine,
and to the fact that in its casting the alignment was not straight;
that the repeated breaking of the·eccentric rod was not due to
any defect in the rod, but to the improper structural condition
of the engine; and that after making this discovery the defend-
ants ceased to use the engine, because it was totally worthless.
They pleaded also accord and satisfaction as to the shingle-mill,
alleging the circumstances under which it was purchased, the rep-
resentations of the seller, the unsuccessful efforts to operate the
mill, and its worthlessness.    The plea then proceeded as follows:
"That after the discovery that said mill would not perform, of the
defects in the material, defendant visited plaintiffs in Atlanta and
informed them of same; when they agreed to take back the shingle-
mill in full satisfaction and accord of the purchase, and asked de-
fendant if it was covered by a shed, and, when informed that it
was, requested that it remain until [it] could be sold, and that it is
still under the shed and is the property of plaintiff.    Wherefore
defendant says there is a full accord and satisfaction of $750.00,
the purchase-price of the mill, that plaintiff should not recover
against them the consideration, to wit $750.00, the purchase-price
of said shingle-mill and outfit."    The defendants also set up cer-
tain credits, which were admitted by the plaintiff. · On demurrer
the court struck the pleas of failure of consideration and accord and
satisfaction, and directed a verdict for the plaintiff for the sum due
on the notes, less·the admitted credits.    Exception is taken to the
striking of the pleas on demurrer, and the direction of a verdict.

*W. B. Short* and *Hatcher & Hatcher,* for plaintiffs in error.

*W. D. Crawford,* contra.

EVANS, P. J.    (After stating the foregoing facts.)

1.  The defendants, in their plea of failure of consideration of
the engine, recognized their waiver of any other warranty except
that limited in the contract.    Their plea was, that there had been
a breach of this limited warranty, which was to the effect that the
engine was manufactured of good material and good workmanship,
and that by proper management it would perform well; and,
after complaints, if the sellers were not able to make it work well,

26

and the fault was in the engine, it was to be taken back.    Their complaint is, that the engine was of faulty construction; that the eccentric rod would break when the machinery was put in operation.    The trouble with this plea is, that, in accepting the limited warranty, the defendants covenanted that they would not claim damages for defective construction or for failure of consideration, unless such claims were made by registered letter to the seller within ten days from the time the engine started.    They seek to evade this provision by setting up an estoppel.    That estoppel was that they verbally complained to the seller on two occasions of a defective eccentric rod, and that the seller authorized them to supply this defect at their expense.    They contended that the seller's conduct in acting upon their verbal report of a defective eccentric rod amounted to a waiver of the stipulation requiring ten days written notice by registered letter of a structural defect in the engine, inasmuch as the frequent breaking of the rod was notice that the defect was not in the rod, but in the casting and alignment of the engine.    The warranty clause respecting the engine provided for two contingencies, one for duplicating defective parts, and the other for structural defects in the engine of such a character that it would not perform its service.    If the defect related to a part, the warranty clause provided that such part was to be supplied, if the defect was discovered and the defective part exhibited to the seller within a month.    The plaintiff complied with this provision of the warranty.    The other contingency related to claims for damages for a general structural defect; and with respect to such, the stipulation was that the buyers must notify the seller by registered mail, within ten days of the starting of the engine, of such defects, as a condition of ,claiming damages for a failure of consideration.    This was not done, and for this reason the defendants were cut off from pleading failure of consideration. *Fay & Egan* v. *Dudley,* 129 *Ga.* 314 (58 S. E. 826) ; *Mayes* v. *McCormick Harvesting Machine Co.,* 110 *Ga.* 545 (35 S. E. 714). The request to duplicate defective parts, and compliance therewith by the vendor, was not notice of the general defective condition of the engine.

2.    In the plea relating to the shingle-mill the defendants do not undertake to claim damages because of a failure of consideration.    The plea sets forth, by way of inducement, 'the circum-

stances attending the purchase of the mill; representations of the seller; the unsuccessful efforts to operate the mill; its worthlessness. The plea then proceeds to aver, that the purchasers acquainted the seller with its defects and deficiencies, informing it that the mill was not in use but was stored under a shed on the defendants' premises; whereupon the plaintiff agreed to take it back in full satisfaction and accord of its purchase-price ($750), and requested that it remain under the shed until the plaintiff could sell it; that the mill is still under the shed and is the property of the plaintiff. This defense to the notes amounts to this: the defendants bought several pieces of machinery for an aggregate sum, and upon the terms expressed in a written contract; notwithstanding the defendants were cut off by their written agreement from pleading failure of consideration to the shingle-mill, because of their failure to give the notice required by the contract, yet the plaintiff voluntarily agreed in parol to take back a part of the machinery in satisfaction of so much of the aggregate sum as that part represented in the entire purchase-price, and that the plaintiff accepted the shingle-mill by agreeing to take it as it stood under the shed of the defendants' premises.     It is a plea of partial accord and satisfaction, or partial payment of the debt by the alleged resale of the specific 'property.     The circumstance that the consideration of the notes included the original purchase-price of the machinery agreed to be accepted as a credit in no wise affects the legal proposition made by the plea.     It would be the same as if the defendants told the plaintiff that they had an automobile under the shelter, which they offered to the plaintiff to be applied as a credit for a stated amount on their notes, and the plaintiff had accepted the offer.     A contract between the parties to an executed sale to resell the goods is within the statute of frauds.     20 Cyc. 241.     This statute requires that every contract for the sale of goods, wares, and merchandise to the amount of $50 or more shall be in writing, except the buyer shall accept part of the goods sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment.     Civil Code, § 2693, par. 7.     The agreement to give a credit for the price of the shingle-mill on the notes is not a sufficient part payment, unless a receipt to that effect was given, or the price was actually credited on the notes, or other memorandum of the fact was made by the original vendor.     20 Cyc. 252.

The circumstances relied upon by the defendants to show delivery and acceptance are insufficient for that purpose. Where possession is retained, by the vendor, something more than the parol agreement of sale relating to the transfer of the title and the possession is necessary to constitute constructive delivery. The statute requires something more than mere words; it calls for acts, to dispense with a writing. It must appear that after the parol contract was made, some act was done within the intention of the parties indicating an assertion of dominion over the goods by the vendee. It is no objection that such act be done by the vendor as the agent of the vendee. The vendee may constitute his vendor his bailee to accept the goods, but such bailee must do some act on the faith of the parol contract which characterizes his possession as that of agent or bailee of the vendee, or the vendee must do some act in recognition of the change in the character of the possession. The leading English case on the subject is Elmore v. Stone, 1 Taunton, 457, where the plaintiff, who kept a livery-stable and also dealt in horses, proposed to the defendant to sell him a pair of horses at a given price, but the defendant offered a less price, which was rejected; at length he sent word that the horses were his, but that the plaintiff must keep them at livery for him, and the plaintiff manifested his acceptance of this by removing the horses from his sale-stable to his livery-stable. It was held by Lord Mansfield, that the plaintiff, from that time, possessed them not as owner but as bailee of the vendee; that the removal of the horses to his livery-stable under an agreement that the purchaser was to pay for their keep was an act done by the vendor as the agent or bailee of the vendee, so as to take the case out of the statute. This ruling has been adhered to in subsequent English cases. Castle v. Sworder, 6 H. & N. 828; Beaumont v. Brangeri, 5 M. G. & S. 301; Marvin v. Williams, 6 E. & B., Q. B., 726. This rule has been followed in this State. In the case of Daniel v. Hannah, 106 Ga. 91 (31 S. E. 734), the debtor verbally agreed to sell to his creditor a certain number of bales of cotton to be credited on an account due by the former to the latter; and it was held that there was an acceptance and delivery of the cotton when the debtor moved it to a public place designated by the creditor and agreed upon by the parties in their contract of sale. The subsequent case of Tift v. Wight & Weslosky Company, 113 Ga. 681 (39 S. E. 503), does not lay down the contrary principle. In

that case a customer agreed to purchase a certain quantity of oats in the house of the merchant at a given price, and the oats' were weighed, set aside, and the customer's name placed on them, and they were charged to him on the books under an agreement that this should be done, and that the customer should subsequently send and get the oats. It was held·that this transaction was sufficient to establish a completed sale of the oats. The segregation of the oats after the contract of sale, and marking them, were acts indicating a change of ownership and a transfer of dominion by the seller to the purchaser.

In the case at bar no act is alleged to have been done by the vendor or vendee, after the alleged contract of resale, which indicated a change in the character of defendants' possession. The only fact relied upon to establish a constructive delivery was the verbal contract of resale, by the terms of which the defendants were to keep the mill under the shelter until the plaintiff could sell it. The machinery was not moved, nor is any act of the defendants alleged to have been done as the agents of the plaintiff. The purchase-price being for more than $50, the parol agreement was within the statute of frauds; and as nothing was done to bring it within the exception, the court properly struck this plea.

*Judgment affirmed. All the Justices concur.*