24279. FRICK COMPANY *v.* BRIDGES *et al.*

DECIDED APRIL 15, 1935.

*James W. Bonner, Lowrey Stone,* for plaintiff.
*A. H. Gray,* for defendants.

GUERRY, J. The Frick Company sued Ruth R. Bridges and Don Bridges on certain promissory notes in the sum of $600 each. These notes represented the purchase-price of a certain engine sold under an express warranty contained in the order therefor signed by the defendants. The defendants admitted a prima facie case and set up as a defense that the engine was worthless and that the consideration for the notes had failed. By amendment the plaintiff attached to its petition the order for the machinery. This order was dated August 3, 1931, at Blakely, Georgia, and contained shipping directions to Fort Gaines, Georgia, for "One 'Beu' Twin City, 85 H. P. Engine Clockwise rotations with ...............'' The contract expressly warranted that the engine would burn fuel oil of 120 flash point, and that it was "well built, of good material, and when properly operated under like conditions, will perform as well as any other machine of the same size and rated capacity.'' The order or contract provided that $600 was to be paid in cash, and notes and mortgage executed for remainder of purchase-price; and these notes so executed are the ones sued upon. The evidence disclosed that the engine was shipped, and the $600 paid as per the contract, and notes and mortgage executed for the remainder of the purchase-price. The engine was set up for operation on August 26, 1931, and on trial was found to be defective in particulars set out in detail in the plea of the defendants. Thereupon notice in conformity with the contract was given Frick Company of such defects, and it sent a representative or representatives who made certain repairs. The evidence disclosed that after these repairs and corrections were made, the engine still failed to come up to the express warranties contained in the order. Don Bridges testified: "After Frick and Company got through putting in the cooling tower they didn't stay around there and see it run long. Mr. Askew [a representative of the plaintiff] told me, after the cooling tower had been put in and connected, that it was laboring like hell. I told Mr. Askew I wanted him to take the engine back and give me my money, which his folks agreed to, and he said he would take it up with Mr. Ball. I wrote Ball in Atlanta and told him the engine would not pull the gin satisfactorily, and he said he would take it up. I tendered the engine to D. J. Askew, and wrote Frick and Company in Atlanta, offering to return the engine to them, but never got any response. I never got any response from Frick

and Company in Atlanta, and nobody connected with Frick and Company ever came to see me after they put up the cooling tower." "I have never returned that engine to the place where I received it, because they asked me to try it, and if it did not perform, my money would be returned; but I have offered it back. I used the engine two seasons, but did not use it but six days after the cooling tower was installed. I did not return the engine at the end of the ginning season (1931), as Mr. Askew told me they were selling engines, not buying them. I got the engine at Fort Gaines, and never did take it back to Fort Gaines." "I ginned 1520 bales in 1931, ginning approximately 600 of them with the little engine." 920 bales were ginned with the engine bought from Frick Co. "The reason I used the engine in 1932 was because they would not accept it when I offered it back and I did not have sufficient funds to buy another." The jury returned a verdict in favor of the plaintiff for $600, instead of $1800 sued for, and the plaintiff made a motion for a new trial which was overruled, and it excepted.

The contract of purchase contained the following provisions: "2. If, after notice by the purchaser as hereinafter provided and opportunity given to make machinery fulfill terms of warranty, it fails to make said machine, or attachments, or part thereof, perform according to contract, the company reserves the right to replace any part or parts, and if then the machine can not be made to fill the warranty, the machine or parts that fail are to be returned by the purchaser free of charge to the place where received, and Frick Company notified thereof, and at its option another may be substituted therefor that does fulfill the warranty, or the notes and money for such machine, part or parts, shall be immediately returned and the contract rescinded to that extent, and no further claims are to be made on Frick Company. . . The purchaser agrees as follows, to wit: If the machinery does not fulfill terms of warranty, to give notice in writing to the agent through whom purchased and by registered letter to Frick Company, Waynesboro, Pa., within five days from first putting same in operation, stating in what respect said machinery fails to perform. If defects reported are such as can be remedied by purchaser, Frick Company may, by letter, suggest remedy. If purchaser still fails to make same perform, he will immediately notify Frick Company again at Waynesboro, Pa., by telegram or registered letter,

and allow reasonable time to remedy defects, rendering at all times friendly assistance. ■ To return machinery immediately to place where received, if Frick Company fails, after notice as above, to make same fulfill terms of warranty. ■ If machinery is used longer than five days from first putting same in operation, without notice of failure to fulfill warranty, as required in paragraph *a* above, or if used at all after Frick Company is alleged to have failed to remedy defects, it shall operate as an acceptance of same and as a fulfillment of the terms of the warranty. ■ That any assistance rendered by Frick Company, through its agents or employees, in operating said machinery within five days from starting same, shall not dispense with the notice required in paragraph *a* above, if same does not fulfill terms of warranty; nor shall such assistance operate as a waiver of such notice if given after the expiration of said five days, when no notice has been given of alleged failure to perform as provided in paragraph *a* above. . . ■ That this order contains in writing and print the entire contract between the parties hereto, and that he has notice that no agent or salesman of Frick Company has authority to bind the company by any agreement not herein contained, not to alter this contract after it has been accepted by said company, nor take checks or notes payable otherwise than to order of Frick Company and that no employee of the company who is sent to make repairs or put machinery in operation, has authority to bind the company by any declaration, statement, or promise he may make with respect thereto."

If believed by the jury, the evidence was sufficient to show that the plaintiff failed to deliver an engine which measured up to the express warranties contained in the contract of purchase. The evidence was also sufficient to show that the defendant complied with the terms of the contract of purchase with reference to giving notice of defects within five days after first putting the same in operation. The evidence was sufficient to show that Frick Company had failed to remedy the alleged defects pointed out, although an effort had been made so to do. As shown above, the contract provides that if Frick Company shall fail to remedy such defects, the purchaser shall "return machinery immediately to place where received," and further, that if the machinery is "used at all after Frick Company is alleged to have failed to remedy defects, it shall operate as an ac-

ceptance of same and as a fulfillment of the terms of the warranty."

It provides also "that no agent or salesman of Frick Company has authority to bind the company by any agreement not herein contained." It is undisputed that the defendants used the engine through the season of 1931, although it was shown that Frick Company made no further effort to repair it or make it comply with the express warranties, and that the defendants sent a check in January, 1932, in part payment, and promised at that time to pay past-due notes. The engine was used again in the ginning season of 1932, until the ginning outfit was burned. It is not contended that the machinery was ever carried back to the place where it was received. It is contended that it was offered back to an agent of the plaintiff and that the defendant offered by letter to return it.

The question here to be decided, in view of the prima facie case admitted, is not only, did the defendants show a failure of the express warranty made by the plaintiff, but also did they show a compliance on their part with the conditions to be performed by them in order to hold the seller liable? Courts do not make contracts for parties. They do construe and enforce them as made. In the case of *Case Threshing Machine Co.* v. *Cook, 7 Ga. App.* 631 (67 S. E. 890), it was said: "Upon failure of the engine to satisfy the warranty, or failure of the seller, on notice, to make it do so, a notice by the purchaser to the seller and his agent, that the engine is not doing satisfactory work and is held subject to the order of the seller, is not such a return of the engine as would be a compliance with the contract, and does not relieve the purchaser from liability for the price of the engine, where there is no waiver by the seller of the terms of the contract. This would be especially true if the purchaser, after making the complaint and giving the notice, continued to keep the engine in his possession and to use it." In *International Harvester Co.* v. *Bowen, 16 Ga. App.* 457 (85 S. E. 613), where the contract involved was similar to the one in the case at bar, in that it provided that after notice of defects in the property purchased and a failure of the seller to remedy the defects, the buyer should "immediately return it," it was said: "It was incumbent upon the purchaser to show this [that the defects were not remedied] and immediately to return the machine to the sender, before he could plead failure of consideration." In *International Harvester Co.* v. *Morgan, 19 Ga. App.* 719 (92 S. E.

35), it is said: "It is rightly conceded by the defendants that where, in the sale of machinery, there is an express warranty as to quality, and by the terms of the warranty liability of the seller is predicated upon conditions which must be performed by the buyer, the seller will not be held liable on the warranty thus limited, unless the buyer complies with the terms and conditions therein set forth." See cases therein cited. See also *Tinsley* v. *Gullett Gin Co.*, 21 *Ga. App.* 512 (3) (94 S. E. 892). In *McCormick Harvesting Machine Co.* v. *Allison*, 116 *Ga.* 445 (42 S. E. 778), it was said: "Upon the failure of the machine to work well and failure of seller, upon proper notice, to have it put in order, a notice by the purchaser to the agent of the seller that the machine was held subject to the seller's order was not a compliance with the terms of the contract, and did not relieve the purchaser from liability for the price of the machine, when it did not appear that the seller or his agent ever took possession or control of the machine in pursuance of such notice."

It is clear from the contract of purchase in this case that no agent sent by Frick Company had any authority to accept or decline any tender of the property or to waive the terms of the contract. The failure of the defendants, after it was alleged that Frick Company had failed to make good the express warranties, to return the engine to the place where it was received was such a failure of compliance with the terms of the contract of purchase as not to relieve the purchaser from liability therefor. The continued use of the engine through the season of 1931 and the season of 1932 until it was injured by fire was admittedly a use of it more than five days after it was shown that Frick Company had failed to remedy alleged defects. Contracts similar to this have been before our courts many times, and they have been enforced as written. Where the express warranty of the seller is predicated upon conditions which must be performed by the buyer, the seller will not be held liable on the warranty thus limited, unless the buyer complies with the terms and conditions set forth therein. Bridges failed to return the engine as provided in the contract, and continued to use it after Frick Company had failed to properly repair it and make it comply with express warranties. A verdict for a lesser amount than that contracted for was not in accord with the evidence. There was no waiver shown by the evidence on the part of Frick

Company of these provisions in the contract. The court therefore erred in overruling the motion for a new trial.

*Judgment reversed.* *Broyles, C. J., and MacIntyre, J., concur.*