30252. FRICK COMPANY INC. *v.* SMITH.

DECIDED NOVEMBER 12, 1943.

*Shaw & Shaw,* for plaintiff. *Wright, Willingham & Fullbright, Rosser & Rosser,* for defendant.

SUTTON, J. The plaintiff sued the defendant upon two promis-

sory notes which had been given as part of the purchase price of certain farming machinery and which were secured by a mortgage on the machinery. The petition, as amended, alleged substantially as follows: That on April 23, 1940, defendant executed a written order to plaintiff for the following described property: "1 Fedon Harvester '69' with sacking equipment, 1 soy bean sieve, 1 crimson clover sieve, 1 lespedeza sieve, 1 universal coupling for power take off to fit Int. Farmall H. tractor;" that this order was accepted by plaintiff and the property delivered; that the order contained the following express warranty with respect to the property: "That it is well built, of good material, and when properly operated, under like conditions, will perform as well as any other machine of the same size and rated capacity. If, after notice by the purchaser as hereinafter provided, and opportunity given to make machinery fulfill terms of warranty, it fails to make the machine, or attachments, or parts thereof, perform according to contract, the company reserves the right to replace any part or parts, and if then the machine cannot be made to fill the warranty, the machine or parts that fail are to be returned by the purchaser free of charge to the place where received and Frick Company notified thereof, and at its option another may be substituted therefor that does fulfill the warranty, or the notes and money for such machine, part or parts, shall be immediately returned and the contract rescinded to that extent and no further claims are to be made on Frick Company;" and the defendant agreed, in part: " (a) If the machinery does not fulfill terms of warranty, to give notice in writing through the agent through whom purchased and by registered letter to Frick Company, Waynesboro, Penna., within five days from first putting same in operation, stating in what respect said machinery fails to perform. . . (b) To return machinery immediately to place where received, if Frick Company fails, after notice as above, to make same fulfill terms of warranty. (c) If the machinery is used longer than five days from first putting same in operation, without notice of failure to fulfill warranty, as required in paragraph (a) above, or if used at all after Frick Company is alleged to have failed to remedy defects it shall operate as an acceptance of same and as a fulfillment of terms of warranty. (d) That any assistance rendered by Frick Company, through its agents or employees, in operating said machinery within five days of starting

same, shall not dispense with the notice required in paragraph (a) above, if same does not fulfill terms of warranty, nor shall such assistance operate as a waiver of such notice, if given after the expiration of said five days, when no notice has been given of alleged failure to perform as provided in paragraph (a) above . . . . (g) That this order contains in writing and print the entire contract between the parties hereto, and that he has notice that no agent, or salesman of Frick Company has authority to bind the company by any agreement not herein contained, nor to alter this contract after it has been accepted by the company . . and that no employee of the company who is sent to make repairs or put machinery in operation, has authority to bind the company by any declaration, statement, or promise he may make with respect hereto;" that the notes and mortgage were executed in compliance with said order; that defendant failed to give plaintiff the notice in writing by registered letter of any failure of the machine to fulfill the terms of warranty, and did not return the machinery to the place where he received it, but continued to use it longer than five days from first putting it into operation without notice of failure of the machinery to fulfill the terms of warranty; and that this operated as an acceptance of the machinery by him and a fulfillment of the terms of warranty as set out in the order. The petition sought to recover principal, interest, and attorney's fees; and a special lien against the property described in the mortgage.

The defendant by his answer admitted the execution and delivery of the notes sued on and that the plaintiff was the holder thereof and gave written notice to bind him for attorney's fees in case of a recovery by the plaintiff; but denied that he was indebted to the plaintiff, and set out that the notes were given for the purchase price of a combine-harvester; that it was known to the plaintiff at the time of the purchase that the combine-harvester was purchased for the purpose of cutting wheat, and also for cutting and harvesting crimson clover; that the machine was delivered on June 8, 1940, to the agent of the plaintiff, who under the terms of the contract was to assemble and place the machine in operating condition so that the clover could be harvested therewith; that the agent was never able to assemble the machine and make the machine work, although he repeatedly endeavored to do so and called on the plaintiff to send its agent and mechanic; that the plaintiff did send a

man from Atlanta, and a man from its home office, who endeavored to make the machine operate, but that the machine never operated satisfactorily to harvest either clover or wheat; that the machine was wholly and totally worthless for the purpose for which it was intended; that he never accepted delivery of the machine, and the machine was never delivered to him; that he had notified the agent of the plaintiff that the machine was theirs to be disposed of as they saw fit; that at the time he executed the notes and mortgage he paid the plaintiff $216.75, and while the agents and representatives of the plaintiff were still endeavoring to place the machine in a condition where it would operate for the purpose for which it was intended, which they failed to do, he paid the plaintiff $147; that he lost crimson clover of the value of $300 because the machine could not be operated to harvest it; that by reason of the facts set out, the plaintiff was indebted to him in said sums with interest thereon at 7%, and judgment was prayed for same.

On the trial there was evidence to the effect that the defendant contacted the plaintiff's sales agents, Ben Keown & Sons, and placed the order above described with them; that the machinery was sent to them, where it remained for several weeks; that the defendant instructed them to deliver the machine to his Tennessee farm, and they undertook to do so, but were met before they arrived at the farm by Tod Jackson, the manager of the defendant's Tennessee farm, and also his son-in-law, who requested them to deliver the machine at the farm of a Mr. Wildman; that the machinery was unloaded at this farm on June 8, 1940, and put into operation by Tod Jackson in an attempt to harvest a crop of crimson clover seed, and that the machine did not do satisfactory work; that later, representatives of the plaintiff undertook to adjust the machine so as to make it harvest crimson clover, but, according to the evidence for the defendant, their efforts were not successful. In the spring of 1941, Tod Jackson attempted to harvest crimson clover, rye, barley, and oats with the machine without getting satisfactory results, and in the fall of 1941 the defendant moved the machine to his farm in Walker County, Georgia, and placed it in a shed where it was at the time of the trial. The defendant paid the plaintiff $216.75 on June 8, 1940, when the machine was brought to the farm of Mr. Wildman. This was paid by Tod Jackson by a check on the defendant. The defendant also paid the $147 note which came due September 1, 1941.

The defendant admitted that he had not given any notice to the plaintiff by registered mail to Waynesboro, Pennsylvania, about defects in the machinery; but testified he probably had some correspondence with them there, and that he thought he made an offer to deliver the machine to any agent of the company. He also testified that he had never accepted the machine nor authorized anyone else to accept it for him; that he moved the machine to his farm in the fall of 1941 and put it in a shed, and that it was still there.

The jury returned a verdict for the defendant for $363.75 principal, and $64.64 interest. The plaintiff filed a motion for a new trial, which was later amended, and the exception here is to the judgment overruling the motion for a new trial.

■ The plaintiff contends that the court erred in overruling the motion for a new trial on the ground that the verdict in favor of the defendant was not authorized by the evidence. On the trial, the defendant contended that he had never accepted the machine. But under the contract entered into by him, he agreed that, "If machinery is used longer than five days from first putting it into operation, without notice of failure to fulfill warranty, as required by item (a) above, or if used at all after Frick Company is alleged to have failed to remedy defects, it shall operate as an acceptance of same and a fulfillment of the warranty," and the evidence showed that when the defendant first saw it several days later, "it was in operation,—my son-in-law was trying to harvest some barley" with it, and there was other evidence to the effect that the machine was used over a period of several months in attempts to harvest various crops with it, although the defendant contended that it never did do satisfactory work. It was admitted that the defendant never gave the plaintiff written notice by registered mail to Waynesboro, Pennsylvania, of the defects in the machinery as required by the contract of purchase. In a case before this court involving a similar contract, this court held: "Under numerous decisions of our courts of last resort, under the clause of the contract above referred to, notice within five days after the first use of the machinery sold was a condition precedent to recovery by the defendants. *Robinson* v. *Woodruff Machinery Manufacturing Co.*, 23 *Ga. App.* 426 (98 S. E. 405), and cit.; *Tinsley* v. *Gullett Gin Co.*, 21 *Ga. App.* 512 (3) (94 S. E. 892). Under the contract in this case, this conduct on the part of the defendants in failing to notify the plain-

tiff and not offering to return the machinery to it in performance of the conditions precedent in said contract amounted to an acceptance of the machinery and a waiver of this defense." *Oliver Farm Equipment Sales Co.* v. *Neely,* 50 *Ga. App.* 231 (177 S. E. 606), and cit. See *Walker* v. *Malsby Company,* 134 *Ga.* 399 (67 S. E. 1039). The defendant did not contend that he had ever returned the machinery to the place where he received it, but testified: "I think I made an offer to return or deliver to any agent of the company this machine, and told them they could do what they wanted to with it. . . I brought this machine to my farm in Walker County, Georgia. . . I put it in the shed and that is where it is to-day." An almost identical contract was before the court in the case of *Frick Company* v. *Bridges,* 51 *Ga. App.* 123 (179 S. E. 861), wherein the court held "that the purchaser would not be let in to plead and show that the machine was worthless, unless he had complied with the terms and conditions stated in the contract. (*a*) Where in the sale of machinery there is an express warranty as to quality, and, by the terms of the contract, liability of the seller for the breach of such warranty is predicated upon conditions which must, as a condition precedent, be performed by the buyer, the seller will not be held liable on the warranty thus limited unless the buyer complies with the conditions set forth therein. (*b*) The defendant's contention that the terms of the contract were not binding upon him, for the reason that the plaintiff had never accepted it and the machinery ordered and described in the contract was not of the same kind as delivered, is not meritorious, in view of the defendant's admission of a prima facie case in the plaintiff. . . The evidence for the defendant failed to show a compliance with the terms of the contract of purchase, and a verdict for a less amount than the face amount of the notes sued on was not supported by [the] evidence." The undisputed evidence in the present case shows that the defendant did not comply with the conditions of the contract and give the notice therein required, and that he did not return the machinery, but kept it in his possession, and still had possession of it at the trial. Under these circumstances the defendant was precluded from rescinding the contract. *Case Threshing Machine Co.* v. *Cook,* 7 *Ga. App.* 631 (67 S. E. 890). See also *Belle City Manufacturing Co.* v. *Palmer,* 53 *Ga. App.* 431 (1) (186 S. E. 219); *McCormick Harvesting Machine Co.* v. *Alli-*

*son,* 116 *Ga.* 445 (2) (42 S. E. 778) ; *Neon Lights Advertising Co.* v. *Briggs,* 60 *Ga. App.* 135 (3 S. E. 2d, 113), and cit.; *International Harvester Co.* v. *Dillon,* 126 *Ga.* 672 (55 S. E. 103) ; *Neely* v. *Oliver Farm Equipment Sales Co.,* 52 *Ga. App.* 166 (182 S. E. 630), and cit. The verdict in the present case was not supported by the evidence; and the court erred in overruling the motion for a new trial.

■ It is contended in special ground 1 of the motion for new trial that the judge erred in allowing in evidence a letter, dated August 9, 1941, from Ben D. Keown to the defendant, which stated that Tod Jackson had made complaint at the end of the crimson clover season that the "69" combine did not work satisfactorily, and that the plaintiff, when informed of the complaint, had checked up on all the "69" combines and had been able to adjust them to give excellent satisfaction; that two named representatives of the plaintiff went to see the manager of the defendant's Tennessee farm and he was not at home; but they saw the combine and it needed some repairs before it could be expected to do good field work; that the plaintiff had assured the writer that if the defendant would advise it the exact date the combine would be needed, it would send a man there to set the machine going well before he left; that so far as the writer knew, the plaintiff would still live up to its fine record of filling every promise and agreement. The letter was admitted in evidence over the plaintiff's objection that the contract executed by the defendant, which had been allowed in evidence, showed that the defendant had notice that the agent or salesman had no authority to bind the company or to alter the contract in any way, and that anything the agent might have written would not be binding on the plaintiff. This letter was written several months after the plaintiff and the defendant entered into the contract of purchase, wherein the defendant agreed that the order contained the entire contract between them, and that he had notice that no agent or representative of the company had authority to bind the company by any agreement not contained in the contract, nor to alter it after it had been accepted by the company. Letters written by an agent are not admissible in evidence against his principal unless they were written in discharge of the agent's duties and within the scope of his powers. 20 Am. Jur. 808, § 958. Under the contract entered into between the plaintiff and the defend-

ant in the present case, it appeared that the agent who wrote the letter did not have power to act for the plaintiff, and that the letter was not within the scope of his powers, since it was written several months after the execution of the contract between the plaintiff and the defendant. See *Smith* v. *Vaughn, 37 Ga. App.* 558 (2) (140 S. E. 892); *Wayne Oil Tank & Pump Co.* v. *Claxton, 32 Ga. App.* 530 (124 S. E. 75). The court erred in admitting the letter in evidence over the objection.

■ It is contended in ground 2 that the court erred in allowing in evidence a letter, dated April 16, 1940, from Ben D. Keown & Sons to the defendant, wherein the writer set out that he could not allow the defendant a larger sum for a grain binder than the defendant wanted to trade in on the purchase price of a harvester "69," nor could he make a lower price on the harvester than he had made; and the writer set out various mechanical details of the harvester "69" which he contended showed it to be a better machine than any other in the same price range. The letter was admitted in evidence over the objections of the plaintiff that it was written prior to the time the contract was entered into between the plaintiff and the defendant, and was a representation by an agent that was merged into the contract, and was not binding on the plaintiff. The contract entered into between the plaintiff and the defendant contained a limited warranty, and provided: "This contract contains in writing and print the entire contract between the parties hereto". All prior negotiations with respect to the sale of the machinery were merged into the written contract entered into between the plaintiff and the defendant; and it was not permissible for the defendant to prove that the plaintiff's agent made any warranties or representations with respect to the property other than those contained in the written contract of purchase. *Stimpson Computing Scale Co.* v. *Taylor, 4 Ga. App.* 567 (61 S. E. 1131); *McCormick Harvesting Machine Co.* v. *Allison, 116 Ga.* 445 (1) (42 S. E. 778); *Smith* v. *Loftis Brothers & Co., 43 Ga. App.* 354 (158 S. E. 768); *Frick Company* v. *Bridges, 51 Ga. App.* 123 (179 S. E. 861). The court erred in allowing this letter in evidence.

■ When a contract contains an express warranty, as the one in the present case does, it is error for the court to charge the jury on the law as to implied warranty; and consequently the court erred in charging the jury as complained of in grounds 3 and 4 of the

amendment to the motion for a new trial. In this connection see: *Springer* v. *Indianapolis Brewing Co.*, 126 *Ga.* 321, 325 (55 S. E. 53); *Malsby* v. *Young*, 104 *Ga.* 205 (4) (30 S. E. 854); *Brooks Brothers Lumber Co.* v. *Case Threshing Machine Co.*, 136 *Ga.* 754 (72 S. E. 40), and cit.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*