5834.    TOWNS *v.* WEST.

1. Where, on the ground of fraud, it is sought to evade a written contract by proof of a different contemporaneous parol agreement, and the alleged fraud consisted only in false representations as to the contents of the written contract, and no fiduciary or confidential relation existed between the parties, and it does not appear that there was a sufficient excuse for not reading the contract, the complaining party being able to read and having ample opportunity to read it and understand its contents, the contract as written must control and determine the relations of the parties.
2. The court properly refused to allow the amendment to the petition, and did not err in dismissing the petition on demurrer.

DECIDED MAY 7, 1915.

Action for malicious prosecution; from city court of Floyd county—Judge Reece. June 16, 1914.

*Eubanks & Mebane,* for plaintiff.

*Rowell & Davis, J. F. Kelly, Max Meyerhardt,* for defendant.

WADE, J.  C. A. Towns brought suit against A. S. West for malicious arrest and prosecution.  The petition set forth that West was the president and owner of the West Loan and Trust Company, a corporation engaged in lending money; that on November 1, 1912, West swore out a criminal warrant against the plaintiff before a justice of the peace, charging him with the crime of being a common cheat and swindler (a copy of which was annexed to the petition) ; that under and by virtue of said warrant a lawful constable, duly and legally authorized to serve the same, arrested him and took him before a justice of the peace, detained him, and compelled him to make a bond for the offense charged in the warrant; that at the resulting commitment trial, he pleaded not guilty to the charge, but West appeared at the trial and knowingly testified

falsely against him, and he was thereupon bound over by the jus-
tice of the peace to the city court of Floyd county; that there-
after at the March term of the said city court, West carried on
and followed up the prosecution, and, with the same alleged facts
as the basis of the prosecution as were urged in the commitment
trial before the justice of the peace, drew and had drawn against
the petitioner, by special counsel representing West in the said
prosecution, an accusation in the said city court, charging him with
the criminal offense of larceny after trust (a copy of which was
attached to the petition), and that all the allegations therein were
false and West so knew; that after the said accusation had been
drawn and after the said case had been called for trial in the city
court, and the accused and the prosecution had announced ready
for trial, and a jury had been duly stricken and a plea of not guilty
signed, and the court had instructed counsel for West and for
the State to proceed with proof of the allegations in the accusation,
West abandoned the prosecution and refused to testify or prose-
cute the case further, and, there being no evidence whatever sub-
mitted in said case, the court instructed the jury to find a verdict
of not guilty, which the jury accordingly did, and thereby acquitted
the accused, and the case was finally determined and disposed of;
that the said prosecution was instituted maliciously and wickedly
and without probable cause, and was carried on in the same man-
ner, and that West knew that the said prosecution was false and
unfounded, and the same was resorted to by him for the sole pur-
pose of collecting and extorting money from the plaintiff; that the
prosecution ended only when he demonstrated to West that he
would not be imposed upon by the said false and malicious prose-
cution; that as a result of said prosecution the plaintiff was put to
actual expense in the sum of $50 for attorney's fees in making his
defense, and lost ten days' work of the value of $30, for which he
sued; and he suffered great embarrassment, humiliation, and cha-
grin, and was brought into disrepute with his friends and neigh-
bors, which caused him to suffer pain and humiliation, and, because
of these alleged wanton and malicious acts, he was entitled to puni-
tive damages, for which he sued; that because of all the acts men-
tioned he was injured and damaged in the sum of $10,000, for
which he prayed judgment.

The accusation attached to the petition recited that it was based

upon an affidavit of A. S. West as prosecutor, which charged C. A. Towns with the offense of larceny after trust, "for that the said C. A. Towns . . on the 6th day of May, 1912, with force and arms, did sell and transfer to the West Loan and Trust Company, a corporation, $37.50 worth of earned wages, of the value of $37.50, which said sum was alleged to be due said C. A. Towns by the Southern Railway Company, said sale and transfer being in words and figures as follows, to wit: 'Rome, Ga., May 6, 1912, Southern Railway Company to C. A. Towns, Dr. To services rendered and to be paid May 21, 1912, $37.50. For value received, the above account, which I certify to be true and already earned by me, I hereby transfer to West Loan and Trust Company. I further appoint West Loan and Trust Company my attorney in fact in the collection of total amounts due me by above debtor, to sign my name and receipt for me in the same manner as I myself might were I present. C. A. Towns. R. W. Hicks. Witness.'" The accusation alleges that the said West Loan and Trust Company, after purchasing the said account for $37.50, authorized Towns to receive and collect this sum from the Southern Railway Company for the purpose of delivering the same to the West Loan and Trust Company, for the use and benefit of the said West Loan and Trust Company, and the said Towns did, on the 21st day of May, 1912, after having been entrusted as aforesaid by the said West Loan and Trust Company for the purpose aforesaid, receive and collect the said sum of $37.50 from the Southern Railway Company, and, after so receiving that sum for the purpose of paying the same over to the said West Loan and Trust Company for its use and benefit, did in the county of Floyd, and on the day aforesaid, fraudulently convert the said sum to his own use, without the knowledge and consent of the said West Loan and Trust Company, and to its loss and damage in said sum of $37.50, contrary to the laws of said State, etc. This accusation had indorsed upon it the name of A. S. West as prosecutor, the verdict finding the defendant not guilty, and the following order, signed by the judge of the said city court: "The prosecutor, A. S. West, having abandoned the prosecution of this case before trial, judgment entered against A. S. West for $57.25, costs of this case. John H. Reece, J. C. C. F. C."

Upon the call of the case for trial the plaintiff offered an amendment to his original petition. The court refused to allow the

amendment, and thereafter sustained a general demurrer and dismissed the original petition. To the refusal to allow the amendment, and to the order dismissing the petition, the plaintiff excepted. The demurrer to the amendment was on the grounds, (1) that the amendment does not of itself or in connection with the original petition set forth a cause of action; (2) that it appears from the amendment that the instrument therein set forth was in the plaintiff's possession for a considerable length of time, and he had ample opportunity to read it; and (3) that it was not alleged that the plaintiff could not read, and no sufficient excuse was shown for his failure to read the instrument. The proposed amendment made the following additional allegations: that the plaintiff signed the note or writing set forth in the exhibit attached to the original petition, but signed it believing and understanding that it was only a plain promissory note, and not knowing that it was a transfer of time due to him by the Southern Railway Company, since nothing was said to him by the defendant, West, "as to said writing being anything except a promissory note;" that the plaintiff went to the office where West lends money, in the city of Rome, and there waited for several hours for West to come to his office, and West, on arriving, said he was in a great hurry, and told the plaintiff that he "would have to talk to him very rapidly, as he wanted to get away at once;" that the plaintiff told West he wanted to get $35 in money at once, and West inquired whom the plaintiff could get to indorse his note for that amount, and when the plaintiff replied that he could get one Mr. Loyd, who worked for the Southern Railway Company in East Rome, West filled out a paper "in a great hurry," and handed it to the plaintiff "in a great hurry," and told him to go as fast as he could to East Rome and get said paper indorsed and come back with it to him, as he, West, had to "get away at once;" that West did not give the plaintiff time to read said note at that time, but urged upon the plaintiff the necessity of getting back to him with the note, or else he, West, would be gone and the plaintiff could not get the money on that day; that the plaintiff thereupon took the note, put it in his pocket, ran, and caught the street-car that was just passing West's place of business and going to East Rome, which car required only a minute and a half or two minutes to run from that point to East Rome, and when he got off the car at East Rome he

ran down to where the said Loyd worked in the yards of the Southern Railway Company, and, finding that Loyd was absent, but that one Hicks was in the yards, he requested Hicks to indorse his note for the said sum, and Hicks did then and there indorse the note; that the plaintiff thereupon placed the note in his pocket and "ran and caught said street-car again, and got off of said car at said West's place of business;" that West still was waiting for him and took the note from him and "in a great hurry" handed him out the money and immediately left West's place of business; that "because of said West representing to him that said writing was only a note, and asking that he secure an indorsement on said note, plaintiff believed and relied upon what West represented to him as being the truth;" that he did not know that the said note contained a transfer of "his time which was due him by the Southern Railway Company;" that had he known this to be the fact, he would not have signed the note, since the rules and regulations of that company prohibited its employees from transferring time earned in its employment; that West wilfully and knowingly perpetrated a fraud upon him by representing to the petitioner that said writing was a note, when in fact it was a transfer of time due by the said company to said petitioner, and that said West knew that petitioner thought and believed that said writing was only a promissory note; that West wrote the transfer without his knowledge and consent and against his will, and for the express purpose of perpetrating a fraud upon him, and the insertion of the said transfer in the writing did mislead and defraud him; that West, for the purpose of defrauding him, did not give him time to read the note when West filled it out, and, for the purpose of keeping him from reading it and in order to mislead him, urged him to go to East Rome as quickly as possible, and secure an indorsement as quickly as possible; that upon his return West was "still in a great hurry" and did not give him a chance to read the note before it was signed; that he did not sign the note until he had returned to West's office with the indorsement thereon, and he was induced to sign it by the false and fraudulent representations of West as to its contents; and the said representations were made for the purpose of deceiving and misleading him, and did deceive and mislead him; that he believed and relied on what West said as being the truth, when he signed the said writing.

It will be observed that the transfer which appeared on the paper signed by Towns recites in plain and unambiguous language that the Southern Railway Company is indebted to him for "services rendered and to be paid on May 21, 1912," in the sum of $37.50. Immediately under this transfer Towns and Hicks signed their names. The inquiry naturally suggests itself, why West, in filling out this order, recited therein that the Southern Railway Company owed Towns "for services rendered and to be paid on May 21, 1912, $37.50," unless Towns apprised him of this fact; and if Towns did so apprise him, why? The loan applied for was only $35, and it appears that this $37.50 was the sum which the railway company owed Towns, and that it was paid to Towns on May 21, 1912. This, however, has nothing to do with the determination of the question whether the judge properly refused to allow the proposed amendment. To get back to the real question, it appears from the original petition and from the copy of the accusation thereto attached that Towns was prosecuted for appropriating funds which he had assigned to West and thereafter collected and converted to his own use; and, taking the petition as a whole, it was clearly demurrable. The amendment simply sought to avoid the effect of the statute of frauds, and to excuse the failure of the plaintiff to take the usual and ordinary precautions required of any rational man when entering into a contract, by alleging that the defendant urged upon him the necessity for haste, and impressed him with the idea that unless he *hurriedly* told his business, *hurriedly* sought an indorser, *hurriedly* returned and then *hurriedly* signed the note or writing (terrible exigency!), he could not get the money "that day."

The case of *McBride* v. *Macon Telegraph Publishing Co.*, 102 *Ga.* 422 (30 S. E. 999), was relied upon to support the contention that because West suggested the necessity for haste, the plaintiff was relieved from all duty to exercise ordinary caution and read the instrument before affixing his signature and delivering it to West. In that case it appeared that the plaintiff's agent took the alleged contract in his hand, "fraudulently pretended to read the said alleged contract so that it comprised the agreement that had been made between said agent and the business manager of [the] defendant company, thereby fraudulently pretending and holding out to the said defendant's manager that said paper offered for his

20

signature in truth and in fact contained said agreement and contract really made between the parties," and the defendant's manager accepted the agent's reading as the correct reading of the contract, and signed the instrument without himself reading it, as the plaintiff's agent represented that "he was in a hurry, as he desired to catch a train about to leave the city and wished the matter closed up before he left." The court held that, "under the particular facts and circumstances" of that case, parol evidence showing the terms of the contract alleged to have been actually entered into should have been allowed, after the proper foundation for the introduction of such proof had been laid by first offering evidence to support the contention that the manager was induced by fraud to sign the instrument sued on, which did not correctly recite the agreement to which he had given his consent; but in the same connection the court quoted with approval the following expression from *Bostwick* v. *Duncan,* 60 *Ga.* 387: "It is not the duty or business of the courts to relieve parties from their gross negligence in making their contracts." It was held in *Truitt-Silvey Hat Co.* v. *Callaway,* 130 *Ga.* 637 (61 S. E. 481), that "One having the capacity and opportunity to read a written contract, and who signs it, not under any emergency, and whose signature is not obtained by any trick or artifice of the other party, can not afterwards set up fraud in the procurement of his signature to the instrument." In the case of *Wood* v. *Cincinnati Safe & Lock Co.,* 96 *Ga.* 120 (22 S. E. 909), where an agent of the plaintiff secured the signature of the defendant to a contract just before the approach of a train, by representing that there was nothing whatever in the contract except the reservation of title in the plaintiff until the safe to which the contract related was paid for, it was held that the court erred in striking a plea setting up facts in conflict with the written instrument, since the approach of the train created an emergency that excused the failure to read the instrument before signing, and it was alleged that the defendant had no opportunity to read the paper. In *Thomason* v. *Goldman,* 9 *Ga. App.* 349 (71 S. E. 596), this court said, that one who has been induced to sign a written contract by false and fraudulent representations as to its contents, "made by the opposite party with intent to deceive and which did deceive him," may set up this fraud as a defense to a suit on the note. In *Patapsco Shoe Co.* v. *Bankston,*

10 *Ga. App.* 675 (74 S. E. 60), it was said, that, in order to pave the way for the introduction of parol testimony where it is sought to set aside the terms of a written contract, there must be a fraudulent misrepresentation, and also something that will relieve the party seeking to vary the terms of the instrument from the duty of reading it before attaching his signature. This last holding might be said practically to cover the issue.

The question is: Was there such an emergency at the time of the execution of the note and transfer given by Towns as would relieve him from the consequences of his negligence in failing to read it, or excuse him for relying upon the statement alleged to have been made by West? Cases of this character must, as a rule, depend upon their particular facts, and no general or inflexible rule can be laid down as to when the maker of a note will be excused from the consequences arising from his failure to read it before signing it. It will be noted that in the cases referred to, and in others passed upon by the Supreme Court and by this court, in which an attack on a written contract, by a plea setting up conflicting parol agreements or by parol testimony seeking to vary the terms thereof, was permitted, the misrepresentations of the party perpetrating the fraud were followed at once or almost immediately by the execution of the instrument which failed to set forth the actual contract. In this case the plaintiff took possession of the instrument of writing, carried it away from the presence of West and across the city, and then submitted it to another person, who apparently signed it directly under the part objected to as fraudulent, and the plaintiff then took it back to West, and thereafter signed it. Without commenting on how unreasonable it appears that West should have represented that the instrument, though it contained this plain transfer, was a simple note, when he knew that the plaintiff would have the paper in his possession, with ample opportunity to read it, and could discover for himself its actual terms (since this question may not now be considered by us), it does not appear that the plaintiff was unable to read or that he was incapable of understanding the simple terms and provisions of the contract, or that any device was practiced upon him by West to prevent the fullest examination of the paper by him between the time when it was delivered to him by West and the time when he returned it to West and executed the instrument; nor

does it appear that any confidential or fiduciary relation existed between West and the plaintiff. So far as both the petition and the amendment disclosed, they may have been absolute strangers, and at all events they were dealing with each other at arm's length.

The precise question as to the right of the plaintiff, under the circumstances in this case, to set up a contemporaneous parol contract to vary the terms of a plain, unambiguous written contract, appears to us to have been specifically passed upon in principle by the Supreme Court in the case of *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662), in which the court said: "Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who·was able to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the contract." If one may be allowed to escape the obligations and avoid the consequences of a written contract alleged by him to have been procured through fraudulent representations, it must appear that there was some real reason why he was prevented from exercising that degree of care which the law requires at his hands; and if makers of written contracts may escape therefrom by simply asserting that the other parties misrepresented the effect of the instrument, and that, on account of "hurry," they failed to read or examine it before signing, no real reason for "hurry" and no actual emergency being shown, the value of any written contract might be destroyed if an unscrupulous party thereto should allege that he was somewhat "hurried" at·the time he executed the instrument. Where a long and complicated contract is to be gone over and scrutinized, and one party fraudulently represents to the other that it contains the exact parol agreement between them, the party deceived, under circumstances like those recounted in the *Macon Telegraph Company* case, supra, might be relieved from his negligence in failing to read the contract, but where the contract is perhaps embodied in one line or two, or in half a dozen or more, and is entirely simple and plain, and any man who can read can ascertain by a glance of the eye its meaning and effect, a party certainly can not be excused from reading the contract, when he has enough

and more than enough time, despite all possible hurry, to give the needed inspection. In the present case it does not appear, from either the petition or the proposed amendment, that the contract was complicated and difficult to understand, or that the plaintiff was unable to read or incapable of correctly interpreting it, and it is not alleged, nor can it be implied, that he did not have ample time to read and reread the entire contract over and over again between the time when he left the office of West for his trip to East Rome and the time when he returned again to West and affixed his signature to the paper.

It appears to us, under the allegations of the petition and of the proposed amendment thereto, that the prosecution instituted by West, on account of which the present suit was brought, was, legally speaking, based on such probable cause as undoubtedly would relieve him from the consequences of instituting or pressing a malicious prosecution. It is of no moment to this court whether West was or was not "a loan shark," as alleged in the petition, whether his business is one which is "not inherently uplifting to man," as urged in the brief for the plaintiff in error; for, even in a contest between a "working man" and a "loan shark," no matter where our sympathies might tend to lead us, we are constrained to follow the law as we see it, and to measure the acts of one by the identical rule that we would apply to the acts of the other. It does not appear from any of the pleadings that the prosecution was unfounded by reason of the fact that the lender exceeded the lawful rate to be exacted as interest, and that therefore the contract of assignment was void.

We think the court did not err in refusing to allow the amendment and in sustaining the demurrer and dismissing the petition.

*Judgment affirmed.*