## 8659. TINSLEY v. GULLETT GIN COMPANY.

1. Where exception is taken to a preliminary judgment sustaining a demurrer to the defendant's answer, it must not only appear from the bill of exceptions that a final judgment has been rendered in the case, but it is also required that error be assigned thereon. However, when a specific assignment of error is made upon such previous ruling, and exception is also taken to the final judgment, not for the reason that the latter is erroneous within itself, but merely for the purpose of reaching the error specifically complained of in the antecedent ruling, then a general exception to the final judgment will be deemed sufficient.

2. Where one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it, on the ground that it does not contain the contract actually made; unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it.

3. "Where in a sale of machinery there is an express warranty as to quality, and by the terms of the warranty liability of the seller is predicated upon conditions which must be performed by the buyer before liability upon the part of the seller is to attach, such as that the buyer is to take the property on trial for a specified time, and, upon its failure to fulfill the warranty, give written notice at once to the seller at a designated place, and also to the agent of the seller through whom the property was received, stating in what parts and wherein the property fails to fulfill the warranty, the seller will not be held liable on the warranty unless the buyer complies with such conditions."

4. Where the answer sets up that the defects complained of were latent and concealed, and were of such a character that their existence could not be ascertained within the period allowed by the contract for notice thereof to the seller, but that the seller, knowing of such defects and that they could not be discovered within such time, fraudulently concealed them from the defendant, the answer would not be subject to demurrer on the ground that notice within the time provided for had not been given.

DECIDED DECEMBER 12, 1917. REHEARING DENIED JANUARY 21, 1918.

Complaint; from Calhoun superior court—Judge Cox. December 4, 1916.

*C. J. Taylor, A. L. Miller,* for plaintiff in error.

*Pottle & Hofmayer, Peacock & Gardner,* contra.

JENKINS, J. 1. The second and third paragraphs of the bill of exceptions in this case, are as follows: "On said day, after hearing argument on said demurrer, said court then and there sus-

tained said demurrer and dismissed said answer and plea of defendant, and passed an order and judgment to that effect, and directed a verdict against defendant." "To which action, judgment, order of the court, and direction of a verdict, the defendant in said case then and there excepted, and now excepts, and assigns the same as error." A motion is made to dismiss the writ of error, upon the following grounds: "(1) Because there is no sufficient assignment of error in the bill of exceptions to authorize this court to entertain jurisdiction of the writ of error. (2) Because there is no proper exception to any final judgment. (3) Because the bill of exceptions does not 'specify plainly the decision complained of and the alleged error,' as is required by the Civil Code, § 6139. (4) Because the only attempt in the bill of exceptions to make a valid exception consists of one single assignment of error upon two separate and distinct judgments, without specifying any reason why either judgment is erroneous." In the case of *Johnson* v. *Battle,* 120 *Ga.* 649 (48 S. E. 128), Mr. Justice Lamar, speaking for the Supreme Court, said: "Unless there has been a final termination of the case in the court below, a writ of error will not lie to an order striking a plea, even though the effect of such order may be to entitle the plaintiff to a judgment or verdict as matter of course." But it has been also held, that even where the bill of exceptions recites that, following such a controlling ruling, final judgment has in fact been rendered, there must nevertheless be an assignment of error upon such final judgment, in order that exception may be taken to the antecedent ruling, although the error in the final judgment does not arise within itself, but arises solely by reason of the error committed in the antecedent ruling. *McCranie* v. *Shipp,* 10 *Ga. App.* 544 (73 S. E. 701); *Lyndon* v. *Georgia Ry. & El. Co.,* 129 *Ga.* 353 (3) (58 S. E. 1047). A writ of error, however, is not premature, nor is the reviewing court without jurisdiction, where the ruling complained of would have given final disposition to the case had judgment been rendered as contended for by the excepting party. *Berryman* v. *Haden,* 112 *Ga.* 752 (38 S. E. 53). The third headnote in the case of *Lyndon* v. *Georgia Ry. & El. Co.,* supra, is as follows: "If the ruling or decision complained of as erroneous is one preceding the final judgment, and if it is specifically made the subject of exception and of proper assignment of error, and

33

the final judgment is excepted to, not because of additional error in it, but because of the antecedent ruling complained of, which entered into and affected the further progress or final result of the case, a general exception to the final judgment and an exception to and a specific assignment of error on the antecedent ruling will suffice, relatively to the point now under consideration, to give the reviewing court jurisdiction." Thus the rule appears to be that when exception is taken to a final judgment for the reason that it is erroneous within itself, the error in such judgment so complained of must be specifically pointed out; yet where such final judgment is excepted to merely for the purpose of reaching the controlling error involved in an antecedent ruling, then a general exception only to the final judgment will be deemed sufficient. The questions therefore are: (1) Was there a general assignment of error as to the final judgment? (2) Was there a specific assignment of error as to the antecedent ruling sustaining the demurrer? In the case of *McKenzie* v. *Consolidated Lumber Co.,* 142 *Ga.* 375 (82 S. E. 1062), the assignment of error was as follows: "To this judgment of the court, directing the jury to return a verdict against the defendants, the defendants then and there excepted, and now except and assign error upon the same, and say the court should have overruled the motion to direct a verdict, and erred in refusing so to do." Upon this assignment the court said: "There was no assignment of error upon any judgment entered upon the verdict; but the direction of the verdict was in effect a judgment by the court, and is to be treated as a final judgment upon which error may be assigned in a direct bill of exceptions, and as sufficient, when error is assigned upon it, to bring under review a proper assignment of error upon a judgment or ruling as to the admissibility of evidence made during the trial." Thus, under the above authority, the exception taken to the "direction of a verdict" is equivalent to an assignment of error upon the final judgment itself. Nor do we agree with the other contention of the movant, that the exception is insufficient because it is taken, in a single assignment of error, both to the final judgment and to the order sustaining the demurrer. While the ruling in the case of *American Investment Company* v. *Cable Company,* 4 *Ga. App.* 106 (60 S. E. 1037), was made where both the rulings excepted to in a single assignment of

error were the subject-matter of a single judgment by the trial judge, and while in that case this court said that "If the rulings of the judge of the superior court which are complained of had been separate, it would perhaps have been better to have made two assignments," still we think the spirit and intent of the law, as embraced by section 6183 of the Civil Code (1910), would not permit a dismissal of the writ for this reason. The code section referred to is mandatory, and provides as follows: "It shall be unlawful for the Supreme Court of Georgia to dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to that court, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." As to the other proposition, does the exception taken to the action of the trial judge in sustaining plaintiff's demurrer and dismissing defendant's plea comply with the requirements of the Civil Code (1910), § 6139, by plainly specifying the decision complained of and the alleged error committed? While it does not within itself point out what the plea alleged and on what ground the demurrer attacked it, yet the bill of exceptions recites that the judge sustained said demurrer and dismissed the plea, which action and judgment is assigned as error; and the bill of exceptions specifies the plea, the demurrer, and the judgment sustaining the demurrer, as material parts of the record. In *McGregor* v. *Third National. Bank,* 124 *Ga.* 557 (53 S. E. 93), it was held: "A bill of exceptions which recites that the trial judge overruled a demurrer to the plaintiff's petition, and that exception is taken to such ruling and such ruling is assigned as error, presents a legally sufficient assignment of error, when the demurrer is specified as a material part of the record and discloses what objections were urged against the petition." In *Johnson* v. *Porter,* 115 *Ga.* 401, 403 (41 S. E. 644), it was stated; "When the case was called in this court a motion was made to dismiss the writ of error, first, because the bill of exceptions does not contain any sufficient specification of error. . . The bill of exceptions, after reciting the fact that the court passed an order sustaining the demurrer and striking Mrs. Annie Porter as a defendant in the case, declares: 'To which ruling this

plaintiff, Annie Johnson, excepted, excepts, assigned and now assigns the same as error.' Under a number of decisions of this court it must be ruled that this is a sufficient assignment of error," citing *Frierson* v. *Alexander,* 74 *Ga.* 666; *Melson* v. *Thornton,* 113 *Ga.* 99 (38 S. E. 342). In the latter case it is stated: "The plaintiff in his bill of exceptions recites that 'The defendants to said action filed a demurrer,' etc., and 'that the court passed an order sustaining the same,' and assigns 'error upon the judgment sustaining said demurrer and passing said order.' In specifying the portions of the record to be transmitted to this court, 'the demurrers filed in said case by the defendants A. J. Little and Elberton Oil Mill' are mentioned." From the authorities quoted from or cited, and numerous others which could be mentioned, we think it is clear that a specific assignment of error upon the order of court sustaining plaintiff's demurrer and dismissing defendant's plea has been made, which conclusion, when taken together with the ruling already made as to there being a valid general assignment on the final judgment, necessitates the overruling of the motion to dismiss.

2. The rule stated in the second headnote is supported by abundant authority. See *Walton Guano Co.* v. *Copelan,* 112 *Ga.* 319 (37 S. E. 411, 52 L. R. A. 268); *Georgia Medicine Co.* v. *Hyman,* 117 *Ga.* 851 (45 S. E. 238); *Harrison* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (45 S. E. 730); *Stoddard Manufacturing Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915); *Biggers* v. *Equitable Manufacturing Co.,* 124 *Ga.* 1045 (53 S. E. 674); *Rounsaville* v. *Leonard Manufacturing Co.,* 127 *Ga.* 735 (56 S. E. 1030); *Towns* v. *West,* 16 *Ga. App.* 300 (85 S. E. 274); *Sloan* v. *Farmers & Merchants Bank,* 20 *Ga. App.* 123 (92 S. E. 893). In *McBride* v. *Macon Telegraph Co.,* 102 *Ga.* 422, a defendant was allowed to set up a defense to a written contract signed by him, on the theory that the instrument did not embrace the true terms of the agreement, because of the actual fraud perpetrated by the plaintiff's agent, in that at the time the contract was hastily signed the agent "pretended to read the instrument *so that it comprised the agreement that had been made between the agent and the manager of defendant company,*" the latter "accepting the agent's reading thereof as the correct reading of said contract." In the instant case none of the pleas undertake to show that the agent of plaintiff

purported to read the instrument at all, other than that (quoting from brief of counsel for defendant) "he read from said order the description of the machinery, the price and terms thereof, and also read the words, to wit, 'When this order is accepted by you [Gullett Gin Company] it is understood that the same shall be and be held to be an entire contract between us; and no agreement, verbal or otherwise, other than is set forth herein, forms any part of the contract.' " It is true that it is in substance alleged (again quoting from the brief) "that the said agent wilfully deceived the plaintiff in error as to what was written on the back of said contract, by stating, when he gave a description of the machinery, the notes that were to be given, the time when the machinery was to be shipped, and the purchase-price thereof, that these were all the statements made in said order, and being read therefrom apparently, that plaintiff in error and defendant in error would be bound by no other contract." And in one of the pleas it is alleged that the "agent represented that there was no agreement on the back of said contract, and no conditions in the face of same." We can not think, however, that when one who is able to read is handed a written contract for his signature, with the statement that there is no agreement on the back thereof, when in fact an agreement there printed plainly appears with a caption in capital letters entitled "Warranty," the signer can be protected, by reason of such an alleged statement, from his gross negligence in failing to read, or even to glance at, the contract he was about to sign. Nor do we think that the signer of the contract should be enabled to rely on the statement pleaded by him, to the effect that the agent represented that the portion of the contract alleged to have been read by him, relating purely to "a description of the machinery, the notes that were to be given, the time when the machinery was to be shipped, and the purchase-price thereof," constituted "all of the statements made in said order," when in fact the contract, which appears to have been mainly printed in its original form, embraces six typewritten pages of the record now before us. Even the most casual and indifferent notice of the instrument he was about to sign would have instantly and unmistakably disclosed that the contrary was true as to these averments set up by the pleas. As was stated by the Supreme Court in *Bostwick* v. *Duncan*, 60 *Ga.* 383, 387, "It is not the duty or business of the courts to relieve

parties from their gross negligence in making their contracts." Nor do we think that the answer as amended shows the existence of such an emergency, at the time the contract was signed, as would be sufficient to excuse the utter neglect which the defendant is shown by his pleas to have been guilty of. The language of the amended pleas setting up the emergency relied on is as follows: "That said agent in this seductive manner induced defendant to sign said paper, telling him that he had to be in a hurry, that he had other points to make, and must go." In another portion of the plea the circumstances existing at the time of the signing were thus described: "Said agent hurrying defendant and urging him to sign quickly, that he, the agent, had to catch a train, and representing that said paper was only an order for said machinery with no stipulations therein." In view of the fact that the alleged statements of the agent, upon which defendant relies, were in themselves so manifestly and palpably at variance with the actual facts relating to the contract, the falsity of which would have been disclosed by even the merest and most casual glance at the instrument itself, we do not think, had such an emergency existed as is set forth in the case of *Wood* v. *Cincinnati Safe Co.,* 96 *Ga.* 120 (22 S. E. 909), that even then the circumstances as to the signing would have excused the negligence of the signer. In the present case, however, no such immediate and urgent necessity for haste is shown as was outlined in the *Wood* case. In the mode and character of the alleged misrepresentations, the case at bar is distinguished from the *McBride* case.

3. The rule stated in the third headnote is regarded as a clear and concise statement of the law governing the element of the controversy growing out of the contract in this case, and is quoted from *Brooks Lumber Co.* v. *Case Threshing Machine Co.,* 136 *Ga.* 754 (72 S. E. 40). In that case Mr. Justice Atkinson cites as authority the following cases: *International Harvester Co.* v. *Dillon,* 126 *Ga.* 672 (55 S. E. 1034) ; *Beasley* v. *Huyett,* 92 *Ga.* 273 (2), 278 (18 S. E. 420) ; *McCormick Machine Co.* v. *Allison,* 116 *Ga.* 445 (42 S. E. 778) ; *Mayes* v. *McCormick Machine Co.,* 110 *Ga.* 545 (35 S. E. 714) ; *Fay & Egan Co.* v. *Dudley,* 129 *Ga.* 314 (2) (58 S. E. 826) ; *Walker & Rogers* v. *Malsby Co.,* 134 *Ga.* 399 (67 S. E. 1039) ; Fahey *v.* Easterly Machine Co., 3 N. D. 220 (55 N. W. 580, 44 Am. St. R. 554).

4. This suit was upon notes for the price of a ginning outfit sold by the plaintiff to the defendant under a contract, a copy of which was attached to the petition, and which contained provisions similar to those mentioned in headnote 3 of this decision. The defendant pleaded failure of consideration, because of alleged defects in the machinery; and in an amendment to the answer it was alleged that he was not bound by the contract because it was procured by fraud; that the defects in the machinery, as set out in the plea, although known to the plaintiff at the time the contract was signed, were latent and concealed, and were known to be of such a character as could not be ascertained within the ten days allowed by the contract, during which time notice of such defects could be reported to the seller, in default of which report it would be conclusively presumed that the warranty had been fulfilled and acceptance of the machinery made; that, knowing this, the plaintiff, through its sale agent, fraudulently represented that there were no defects in the machinery, etc. The court, on demurrer, struck the plea as amended. In *Beasley* v. *Huyett,* supra, there was a similar defense, and Chief Justice Bleckley said: "The plea of partial failure of consideration, when amended and enlarged by the further plea of actual fraud on the part of the plaintiff by having knowledge of and fraudulently concealing the alleged defects, knowing that they were latent and could not be discovered within thirty days from the first use of the apparatus (and in fact they were not discovered until afterwards), would be a defense to the action, to the extent, at least, of the partial failure of consideration occasioned by the fraud. There can be no doubt that it is a fraud for manufacturers of machinery to fill it with latent defects not discoverable in thirty days, and then sell it as good but warranting the same only as against defects actually discovered within thirty days, they knowing that the existing defects are not discoverable within that time, and concealing both the defects and their knowledge of them. To do this would be practicing deceit and committing actual fraud. Those who commit actual fraud can not protect themselves against answering therefor by any form of warranty or any limitations which they may introduce in the terms of the warranty. Fraud in the principal contract, the contract of sale, is not to be answered by setting up a collateral contract which was as much the offspring of the fraud as was the principal contract

itself. The special plea, as finally shaped by the plea of fraud, should not have been stricken; and in striking the same and in afterwards directing a verdict for the plaintiff the court erred." For the reason stated in the fourth headnote of the present case, we are of the opinion that it was error to strike the plea of defendant as amended, and to direct a verdict in favor of plaintiff.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*

### ON MOTION FOR REHEARING.

JENKINS, J. Counsel for the defendant in error present a motion for rehearing, based upon the ground that the ruling stated in the fourth headnote of the decision in this case does not take into account that the defendant, in his pleas, failed to describe the defects in the machinery complained of, but, on the contrary, pleaded merely results from the operation of the machinery, which may or may not have been caused by defects, and which may have resulted from unskilful operation; the contention being that, although the defendant was bound to plead the cause, he has merely pleaded the effect. The pleadings of the defendant are voluminous. The first amendment by which it was sought to set out in detail the defects complained of was as follows: "Defendant says that in spite of all his efforts, and those of plaintiff's expert mechanics who were here three different times during the cotton season, and the advice of [its] said agent, Belleau, who was present at the gin at least once a month during the said ginning season, the trouble continued and increased in said machinery. The gin saws gave trouble in not cutting the lint clean from the seed, in cutting and knotting the fibers of the lint, and in the back lashing of the cotton upon the saws, which clogged the machinery and caused it to stop. Seed cotton collected and clogged in the belt passages leading through the elevator, pushing the belts from the pulleys, and collected and congested in the distributor, both of which troubles caused the machinery to be shut down until same could be relieved. The flue leading to the condenser became clogged with lint, dirt, and trash, which not only damaged the sample of cotton, but made it necessary to shut down machinery to clean it out. The condenser became congested with cotton, and the machinery had to be stopped that same might be relieved. All of which troubles caused repeated stoppings of the entire gin system, and loss of time to entire gin crew. Defendant had to stop

the machinery for some such trouble several times a day, so that defendant was able to run said gin only one full day during the entire gin season, and the lost time amounted in all to not less than fifty days in the whole gin season." By a subsequent amendment the defendant alleged as follows: "That the said machinery would not do satisfactory work, in that the general construction of the machinery was such as to cause choking of cotton as hereinbefore set out, and that same would not perform the services for which it was contracted for, on account of defects in said machinery that were latent, and that defendant could not discover, and that plaintiff, in attempting to remedy same, did not disclose to him the defects in same, but simply said to him, 'close down the machinery,' and then left without placing same in running order. That the trouble in said machinery was of such nature that only a machinist could ascertain and by him be clearly defined, and that it was so hidden this defendant could not do so." The third paragraph of the answer, as amended, is as follows: "Defendant says that he faithfully put up and operated the machinery in question properly, according to the plan and directions furnished him by plaintiff for the purpose, said blue print having been sent to defendant by said company, and was used by the company's said mechanic, Mr. Gunn, in erecting the said machinery, and which blue print said mechanic, said company's agent, carried away with him after finishing the erection of said plant; that he employed engine and other motive machinery sufficient for all its needs and to comply with plaintiff's requirements, and did comply with all requirements of plaintiff in equipment and operation, and defendant used every diligence and skill in seeking to operate said machinery successfully by employing and keeping a competent gin man to run said machinery, and so continued said efforts from the time he first began the use of said machinery, to wit, on the 14th day of August, 1914, throughout the gin season of the year named." It thus appears that the plea set up and definitely described certain results attendant upon the skilled and proper operation of the machinery, which a machine not defective would not and should not produce, and which it is alleged rendered the outfit unfit for the services for which it was bought. In the case of *Charleston & Western Carolina Ry. Co.* v. *Attaway*, 7 *Ga. App.* 231 (66 S. E. 548), this court said: "A defect in a machine may

be described by showing that the machine was in such condition that it produced certain definitely described results which a machine not defective would not and should not produce. It is not necessary to describe minutely or particularly the physical appearance of the parts alleged to be defective." In *Atlantic Coast Line R. Co.* v. *Davis*, 5 *Ga. App.* 214, 217 (62 S. E. 1022), it was held: "To say that a locomotive smoke-stack was so insufficiently constructed that it allowed live sparks of fire to come through describes with legal definiteness a lack in its construction." In *Hubbard* v. *Macon Railway & Light Co.*, 5 *Ga. App.* 223, 226 (62 S. E. 1018), the court used the following language: "Even in pleading it is not necessary that the negligent deficiency be described in structural terms; a deficiency may be sufficiently alleged by stating that the particular contrivance was so constructed or maintained that it gave forth a result which it was designed to prevent, and which such contrivances, as they are usually constructed and maintained, do prevent." The averments of the plea having, in our opinion, met the requirements of law as laid down in the rulings quoted from, we think the ground of the motion for rehearing is without merit, and the motion is therefore denied.