19363. NOBLE MACHINE COMPANY *v.* WOOLVIN STAVE COMPANY.

Decided March 6, 1929.

*C. C. Crockett, W. W. Larsen Jr.,* for plaintiff in error.
*E. L. Stephens, T. E. Hightower,* contra.

Luke, J. Noble Machine Company sued R. B. Woolvin Stave Company (which was the trade name of R. B. Woolvin) for $350 on a promissory note given for the balance of the purchase-price

of certain machinery described in the contract of sale as, "One rebuilt Ober No. 10 broom-handle lathe complete with countershaft," and, "One rebuilt Ober belt auto handle sander." This contract of sale, dated (as was the note) on September 27, 1927, contained the following provisions: "It is further agreed that in case of rejection I, or we, will promptly deliver the above- mentioned property to the Noble Machine Company, f. o. b., where directed by you, and that this contract is not modified or added to by any agreement not expressly stated herein; and a retention of the property after thirty (30) days from date of shipment shall constitute an acceptance, to be conclusive admission of the proof of all representations made by or for the Noble Machine Company, and void all its contracts of warranty, expressed or implied." After setting out in the petition the above-quoted part of the contract quoted, Noble Machine Company pleaded that the said property was shipped by it to the defendant on October 6, 1927; that said note was unpaid; and that the "defendant has retained the property for thirty days from date of shipment, thereby accepting the same, and conclusively admitting that all warranties, expressed or implied, in connection with the property are void."

In his answer, the defendant admitted a prima facie case, and further pleaded that the said machinery was worthless, and that immediately upon discovering that fact "he tendered same back to plaintiff, and now holds same as the property of plaintiff," subject to his order; that when he signed said note and contract said machinery was in Indiana, and the defendant was in Georgia and had no opportunity to examine it; that the plaintiff falsely represented to him that said machinery would be "thoroughly reconditioned from the bare frame up in plaintiff's machine shop in Fort Wayne, Ind.," and "guaranteed it to be in first-class mechanical operating condition;" that the plaintiff knew said machinery was worthless and had not been reconditioned, and was not in first-class mechanical operating condition, and that these facts could not be discovered by the defendant within thirty days from its shipment; "that defendant upon receipt of said machinery set same up, and undertook to operate it, and then found same had not been rebuilt, and was not in first-class mechanical operating condition, and could not be used for any purpose, same being worn out and of no value or service whatever;" and that the defendant should have a verdict

for $350, which he paid in cash as a part of the purchase price of said machinery.

The jury returned a verdict for the defendant in the sum of $350, the court overruled the plaintiff's motion for a new trial, based upon the general grounds and certain special grounds, and the movant excepted.

In special ground 1 it is complained that the court, "in connection with the proper charge concerning the rights of the defendant as to concealed defects in the machinery," failed to give a requested charge to the effect that if defendant retained the property for thirty days after shipment the seller would not be liable. A part of the charge referred to in this exception is as follows: "But before the defendant can prevail, you must find that the defendant did not, and could not, discover the defects and shortcomings of the machinery about which he complains, and which the seller had represented to be otherwise, within the period of thirty days from the date of the shipment of the machinery." It is evident that the requested charge is contrary to the charge of the court from which we have just quoted, that it would have eliminated the defense pleaded, and it was properly refused.

In special ground 2 complaint is made that the court did not, in connection with the charge as to concealed defects not discoverable within "the thirty-day period," charge the jury that what the court had said was "true though the vendee claimed that the seller had perpetrated a fraud upon him by falsely representing the quality of the property sold." This requested charge, if given as requested, would have confused the jury, and the court properly refused to give it.

Special ground 3 discloses error in the court's instructing the jury that if the defendant did not discover the alleged defects in the machinery "within the thirty-day period *from the receipt of the machinery*," etc. According to the contract, the time limit ran from *the shipment of the machinery.* In other parts of his instructions the judge followed the contract, but this was error.

In special ground 4 the plaintiff in error admits that the court's charge upon fraud was a correct statement of law, but insists that it was not adjusted to the pleadings and evidence, and was calculated to mislead the jury, to the prejudice of the plaintiff. This ground fails to point out any error with sufficient certainty, and

will not be considered. *Blaylock* v. *Walker County Bank*, 36 *Ga. App.* 377 (3) (136 S. E. 924).

In his brief counsel for the plaintiff in error says: "The defendant's plea was evidently drawn in line with the case of *Tinsley* v. *Gullett Gin Co.*, 21 *Ga. App.* 513 (94 S. E. 892). We recognize the validity of the plea, but the defendant's evidence wholly failed to sustain his plea." It appears, from letters introduced in evidence, that the seller did represent that the machinery would be thoroughly reconditioned from the bare frame up, and that it was in first-class mechanical operating condition. The evidence warranted the jury in concluding that the machinery was thoroughly defective, had never been reconditioned, was not in first-class operating condition, and was unsuited for the purpose for which it was designed, to wit, to make handles for brooms, etc. The controlling factor in the case is this: Did the defendant sustain his plea that he could not discover the defects in the machinery in "thirty days from date of shipment?" The plea alleges, and the answer admits, that the machinery was shipped on October 6, 1927. From the defendant's testimony it appears that he received the machinery "around October 20," first attempted to operate it on November 11, and first notified the seller of the alleged defects on December 8, 1927. Why did he wait until after the expiration of thirty days from the date of shipment to try out the machinery? It may be inferred, from his testimony, that this delay was at least partially caused by the fact that the place where the machinery was to be installed was not ready; but Peyton Towns, testifying for the defendant, is more definite,. and swears: "It was something like two or three weeks after we took it down to the place before we tried to operate it. We did not try to operate it sooner because we had to get some parts before we could try it." These parts were ordered from the factory, not from the seller, and the factory did not have them in stock when the order reached it.

But could the purchaser have discovered the defects in the machinery within thirty days from the time it was shipped to him? The machinery was in transit eighteen days, and, having only twelve days left, he had to act promptly. The defendant testified: "As far as I know, it was properly installed. There was nothing to do but put it on the floor, and take measurements, and cut the belts and put them on. . . The first day that we tried to operate this

machinery, I knew that there was something wrong with it; I knew it was not right." Towns, sworn for the defendant, testified: "We found out the first day that we tried to operate it that it would not operate properly. It would not take a mechanic to tell that there was something wrong with the machinery if he would stand there and watch it operate for a few minutes." R. E. Ladson, the expert mechanic sworn for the defendant, who testified to the manifold imperfections of the machinery, testified: "I suppose I was there an hour. I had to take down this machine and get on the inside before I could tell anything about it. . . Most any mechanic as good as I am could have found the trouble. I do not think it would be hard to find out. Any good mechanic could not help finding the defects in the machinery." This witness further swore: "I did not try to operate it. I just merely looked over the machinery to try to find out what the trouble was. . . That was some time after Captain Woolvin had received the machinery." R. R. Gentry, sworn for the defendant, testified that he had worked at the handle and stave business twenty-five years and that he had had ten years experience in operating such machines. This witness further swore: "I helped to install that machinery, and know that it was correctly and properly installed. . . As soon as I tried out the machinery I found that it would not make the handles like it was recommended. Captain Woolvin was there and found out the condition of the machinery, and I told him about it."

If the machinery would not operate from the first without new parts, how could the purchaser have suspected that it was in good condition? If Ladson could swear to the many defects in the machinery after an hour's examination of it, and without seeing it tried out, how can it be said that such defects could not have been discovered in ten or twelve days? Furthermore, it appears from the testimony of the defendant that the installation of the machinery was a very simple matter; and, from the testimony of the witnesses who saw the machinery tried out, including the defendant, it was perfectly obvious that something was radically wrong with it.

The testimony offered in behalf of the defendant in error not only failed to sustain his plea, but refuted it; and the judgment is reversed because the court erred in overruling the general grounds of the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*