23396.   GULLETT GIN CO. *v.* SEAGRAVES *et al.*

DECIDED SEPTEMBER 29, 1934.

*Clarence E. Adams, Hendrix & Buchanan,* for plaintiff.
*R. Howard Gordon, Erwin, Erwin & Nix,* for defendants.

MacINTYRE, J.   The Gullett Gin Company sued L. C. and A. F. Seagraves on two promissory notes given for the balance due on certain machinery purchased under a sale contract, a copy of which was attached to the petition. The first of these notes is for the principal sum of $1207.76, and is dated August 2, 1930, and payable November 15, 1931. The second note, which is for $469 principal, is dated August 15, 1930, and due December 15, 1931. The sale contract bears the date of May 23, 1930, and shows that

the machinery was a ginning outfit, including four gins with accessories. Under the terms of this contract, it was to be binding when accepted by the seller at its main office at Amite, Louisiana, and was not subject to countermand without the written consent of the seller. The contract also provided that it was the entire contract and could not be varied. It appears that this contract was duly accepted by the seller on May 27, 1930. The warranty clause of the contract is as follows: "Said machinery is warranted to be of good material and to perform well if properly operated by competent persons. Upon starting, if the purchaser at any time within ten days is unable to make the same operate well, telegraph or written notice stating wherein it fails to conform to the warranty is to be given by the purchaser to the Gullett Gin Company at Amite, La. (and not verbally to any of its traveling men), and reasonable time shall be given the Gullett Gin Company to remedy the defect, the purchaser rendering all necessary and friendly assistance, and in case trouble be caused from a clearly defined original defect in the machine itself. The Gullett Gin Company reserve the right to replace any defective part or parts, without charge, but such defective part or parts shall not condemn the machine to which it belongs. If on trial the machine can not be made to fulfill the warranty, and the fault is in the machine itself, the purchaser, when instructed to do so, agrees to load and ship the machine where instructed, and the amount of the purchase-price of same is to be credited on the notes pro rata, or money paid thereon refunded pro rata; the purchaser in such case [not?] to have nor make any claim for any damages of any nature or character whatsoever against the Gullett Gin Company by reason of the failure of said machine to fulfill the warranty, but the pro rata diminution of purchase-price aforesaid to be the sole and only element of damage for breach of this warranty. Failure of any article named herein to comply with this aforesaid warranty shall in no way affect this contract, nor the notes and chattel mortgage and trust deed given in accordance therewith as to the other articles named therein. Failure to make such trial, or to give such notice, or use after ten days without such notice, or use for any ten days without notice, shall be conclusive evidence of the fulfillment of the warranty. The Gullett Gin Company shall at the request of the purchaser render assistance of any kind in operating said machine, or any part

thereof, or in remedying any defect at any time. Said assistance shall in no case be deemed an acknowledgement on its part of a breach by it of this warranty, or a waiver of or excuse for any failure of the purchaser to fully keep and perform the conditions of this warranty. The purchaser agrees to properly put up and operate the machinery according to the directions furnished by the Gullett Gin Company, and that if the fault be traceable to not putting up or operating according to directions, purchaser agrees to pay all expenses incurred in rectifying it. Any failure on the part of the purchaser to comply with this contract releases this warranty entirely."

In their original answer the defendants admitted a prima facie case, and then pleaded at great length their affirmative defense. In order to show the nature of this defense we shall quote from some of the paragraphs of the answer as follows:

9. "Defendants purchased four seventy, 4/70 saw gins from the plaintiff, and agreed to pay the purchase-price of $3150." These gins were located at Reynolds, Georgia, and plaintiff was to dismantle the same and load them on railroad-cars or trucks, and defendants were to pay the freight or themselves haul the same by truck.

11. "Defendants show that they are not bound by said contract of purchase and on said notes sued on, because the same was procured by fraud. The defects in the machinery, although known to the plaintiff at the time the contract was signed, were latent and concealed, and were known to be of such a character as could not be ascertained within ten days allowed by the contract, during which time notice of such defects was reported to T. V. Phillips, and to the Atlanta Office of Gullett Gin Company.

12. "Plaintiff sent blue print with machinery, and the same was put up by a competent gin man, T. M. Pittman, and plaintiff's agents. Davis and Phillips, both inspected the machinery after it was put up and stated that the job was good . . and that the job was a good one. . . The machinery was started around September 15, 1930, and the machinery would not operate from the very beginning satisfactory. Defendants immediately got in touch with T. V. Phillips, the plaintiff's agent, and Davis, manager of Atlanta office by telephone and requested that they come at once, and this was within the ten days from the time that the machinery

started. Davis and a gin expert by the name of Taylor came in response to the notice, and ginned three bales of cotton, which was not satisfactory, and not up to the standard of ordinary ginning, for these reasons, to wit: 1. The gin saw gave trouble in not cutting the lint clean from the seed. 2. There was back lancing of the cotton on the saws, which clogged the machinery and caused it to stop. 3. Seed-cotton collected and clogged in the belt passages leading through the elevator, stopping the belt, and failed to distribute the cotton properly to the gin. 4. The condensor became congested with cotton and the machinery had to be stopped that same might be relieved. 5. All of said troubles caused repeated stoppings of the entire gin system and loss of time to entire gin crew. 6. Defendants had to stop the machinery for some such trouble several times a day, so that the defendants were able to run said ginnery outfit not a full day during the entire gin seasons.

13. "Said machinery would not do satisfactory work, in that the general construction of the machinery was such as to cause choking of cotton as hereinbefore stated, and the failure to clean the seed from the lint, and that the same would not perform the services for which it was contracted for, on account of defects in same, and finally, when every effort failed to make the machinery perform, and after complaint and complaint, Herbert B. Davis, the plaintiff's agent out of the Atlanta office, stated to L. C. Seagraves, one of the defendants: 'I don't give a dam whether it gins cotton or not, I am looking to the contract;' that his company was worth a million dollars and had the money to win it with, and that he would bet a new hat that if the matter got in a law suit that the company would win.

14. "Plaintiff knew that the gin outfit . . would not give satisfactory service when they sold it to the defendants. They also knew that it did not give satisfactory service to the purchaser at Reynolds, Georgia, and that the machinery was defective and would not do satisfactory work, but defendants were ignorant of the condition of the machinery, and that the defects were latent and undisclosed and could not be discovered except in the actual operation of the machinery.

15. "Defendants show that in spite of all of their efforts and those of the plaintiff's experts, their machinist, time and time again

during the cotton season, and advice, and [the] trouble continued and was never remedied.

16. "The first excuse given by plaintiff's agent was that the defendants did not have ample power, and plaintiff stated that the power was not sufficient, and if engines were changed the trouble would end. Defendants acted on said advice and . . purchased . . engine with more power at an added expense of $2250, and installed same, but after this, it refused to work and give satisfaction, having the same old trouble . .

17. "Again, plaintiff claimed that if some changes in pulleys were made, the machinery would work. Defendants changed pulleys at an added expense of $32, but after this change was made, the machinery would not work.

18. "Again, plaintiff claimed that the air nozzles were not adjusted properly, and these were gone into and fixed according to their instructions, and the machinery would not operate any better.

19. "Considerable trouble was experienced by defendants in operating said machinery, in that cotton collected between the ribs of the Huller breast and seed breast, and when this defect was shown to plaintiff, they stated that there was no remedy . . except to have a man with a stick and keep the cotton pushed out. This was so. It had to be done continuously on every bale, thereby taking an extra hand at additional cost . . "

20. The substance of this paragraph is that too many cottonseed came out with the trash, and these seed had to be picked out by hand and run through the gins again at additional cost.

21. The substance of this paragraph is that several bales were set on fire by friction caused by "the clogging of the ribs;" that defendants had to "make this damage good to customers;" and that this same trouble had occurred with the machinery at Reynolds, Georgia, but this was unknown to defendants when they purchased the machinery.

22. The substance of this paragraph is that the "outfit was represented to defendants to gin cotton just as fast and clean the seed as any 4/70 gin in the world, and . . would gin at the rate of one bale every twelve minutes when . . they knew that said machinery would not do it . . and they were practicing a fraud on the defendants."

23. "Defendants show that because of the fraud practiced on

them, and the failure of this consideration because of the defects in said machinery fully described and set out above, that the plaintiff is not entitled to recover any amount."

24. Omitted.

25. "Defendants have paid on said contract of purchase two notes of $1050 each and the interest, amounting to $2100, and a note of $310, and open accounts and insurance amounting to $600, making in all around $2800, and moving the same from Reynolds . . was worth $100; and notwithstanding all these payments and other expense, defendants have yet an outfit that is worthless for what it was purchased; said payments having been made every time with the promise and agreement that said defects in said machinery would be remedied, but which was never remedied . .

26. "Defendants plead by way of recoupment their damage as follows, to wit, growing out of the breach of the warranty on the goods sold:

27. "The sum of $2250, purchase-price of new engine purchased to operate machinery, but which was absolutely unnecessary.

28. "The sum of $30 for new pulleys and belts, which was unnecessary.

29. "The sum of $100 for transporting machinery, except gins, from Reynolds, Ga., to Madison County, Ga.

"In the loss of defendants' best customers . . over a period of three years, defendants have sustained a loss of $1000, net loss."

The amendment allowed to the original plea and answer is substantially as follows:

1. "The machinery . . was absolutely worthless when . . purchased by these defendants.

2. "Plaintiff knew of the worthlessness of the machinery when they sold it to the defendants, and concealed the fact from defendants, and defendants did not know that said machinery was defective.

3. "Defendants pray that plaintiff recover nothing from these defendants on the notes sued on.

4. "Defendants further pray that they recover of plaintiff . . $2100, heretofore paid by them to plaintiff in two payments of $1050 each, and also pray for the recovery of a further amount paid plaintiff of $310 and interest, making $2410; said payments being made, $1050 in August, 1930; $1050 in December, 1930; and $310

in November or December, 1931. And defendants further pray that they recover . . interest on each amount from date paid to plaintiff.

5. "Defendants withdraw such prayers as are contained in their original answer that pray for items or recovery other than those set out in this amendment."

At the trial term of the case plaintiff made four motions to dismiss the plea, the first being to strike the entire original plea and answer of the defendants; the next two being directed at particular paragraphs of said plea and answer; and the fourth being directed at the material paragraphs of the amendment offered to the original plea and answer. For brevity sake we shall pass upon the first motion to dismiss by paragraph, indicating in each paragraph the substance of it.

1. As against the motion to dismiss, the plea is not subject to the criticism that "it does not allege fraud with sufficient definiteness."

2. In view of the plea of fraud, and of other allegations in the answer, we hold that the defendants could plead failure of consideration "against the contract under seal and . . against the limitations of warranty as expressed in the contract." See *Beasley* v. *Huyett & Smith Mfg. Co.,* 92 *Ga.* 273, 279 (18 S. E. 420); *Tinsley* v. *Gullett Gin Co.,* 21 *Ga. App.* 512 (3), (4) (94 S. E. 892).

3. The defendants are not estopped from pleading failure of consideration "by making payments procuring extension of payments." On the back of the first note declared upon appears the following: "Allonge to be attached to and form a part of note of L. C. & A. F. Seagraves, Hull, Georgia, maturing November 15, 1931. The principal or balance of this note says $1207.76, with interest from Nov. 15, 1931, at the rate of 8 per cent. per annum until paid, is, without novation or prejudice to the rights of the original payee or assignee, extended and made payable November 1st 1933." A similar allonge appears on the other note declared upon. There being nothing in the pleadings to show when the extension agreements were executed, this court will not assume that they were executed after the defendants had acquired knowledge of all their defenses to the notes. Of course the making of the payments referred to in paragraph 25 of the answer does not preclude the plea of failure of consideration, since it is alleged in that paragraph

that said payments were made upon the promise by plaintiff that "said defects in said machinery would be remedied."

4. The defendants did not "waive any right to plead either fraud or failure of consideration" by "keeping said machinery and using same after they knew of the defects claimed." When fairly construed the plea and answer avers that during the three ginning seasons the plaintiff's acts and conduct were such as to lull the defendants into a sense of security and leave them under the impression that the defects in the machinery could and would be remedied, and that the plaintiff had acted in good faith throughout the transaction. Furthermore, while "the machinery operated from the very beginning unsatisfactory," and the defendants knew this, we decline to hold that knowledge that the machinery was defective necessarily means knowledge of the fraud alleged. Again, it does not appear from the plea and answer when the defendants acquired knowledge of the fraud.

5. A defendant may plead repugnant defenses if he so desires, and we hold that by pleading recoupment the defendants were not estopped from pleading fraud. It may also be observed here that by their amendment to the original plea and answer the defendants specifically withdrew all claim for damages by way of recoupment. There is no merit in this ground of the motion.

6. Under the facts alleged in the plea and answer, the "use of the machinery after the discovery of any defects for ten days without complaint to the company" did not "defeat all warranties."

7. It is obvious from the conclusions reached above that there is no merit in this contention: "Since fraud nor failure of consideration can be plead under the entire facts of the case, the plea of recoupment is not good."

The second motion to dismiss, which is directed at the allegations of fraud contained in paragraphs 11, 22, and 23 of the original plea and answer, is substantially covered by our conclusions reached in regard to the first motion to dismiss, and there is no merit in it.

In their third motion to dismiss the plaintiff attacks paragraphs 10, 12, 13, 15, 16, 17, 18, 19, 20, 21, 23, 24, and 25 of the plea and answer, its principal contentions being that the limitations in the warranty clause of the sale contract absolutely bound the defendants; that the defendants were attempting to vary a solemn written contract; that the defendants were precluded from pleading breach

of contract and failure of consideration by reason of the fact that they kept the machinery too long; and that alleged defects in the machinery were not shown. In regard to the last contention we quote as follows from the decision in *Tinsley* v. *Gullett Gin Co.*, supra, which in turn quotes from *Charleston & Western Car. Ry. Co.* v. *Allaway, 7 Ga. App.* 231 (66 S. E. 548) : "A defect in a machine may be described by showing that the machine was in such condition that it produced certain definitely described results which a machine not defective would not and should not produce. It is not necessary to describe minutely or particularly the physical appearance of the parts alleged to be defective." Most of the matters in this motion have already been passed upon, and we shall consider particularly the question of the notice of defects later. In this connection it may be observed that in so far as any paragraph of any of the motions to dismiss is based upon any ground which is subject only to a special demurrer, such paragraph is not reached by the motion to dismiss. See *Bank of Norwood* v. *Chapman,* 19 *Ga. App.* 709 (92 S. E. 225).

The fourth motion to dismiss, which attacks the amendment to the plea and answer, is directed at paragraphs 1, 2, 3, and 4 of this amendment, and is grounded upon the contention that the notice given plaintiff of the alleged defects in the machinery did not comply with the specific requirements of the contract. It is true that the contract was not complied with in this regard. A sufficient reply to this contention, however, is that the plaintiff's Atlanta office was notified of the trouble with the machinery, and that in compliance with this notice plaintiff's agents actually came and attempted to make the ginning outfit work satisfactorily. This was a waiver on the plaintiff's part of strict compliance by the defendants with the precise terms of the contract as to the notice. In the language of *International Harvester Co.* v. *Dillon,* 126 *Ga.* 672, 676 (55 S. E. 1034), "The plaintiff was under no obligation under the contract to send a man to make the machine work, unless it received a written notice of the character provided in the contract." And, to use the language of *McDaniel* v. *Mallary Machine Co.,* 6 *Ga. App.* 848, 851 (66 S. E. 146) : "The plaintiff, however, did not neglect the notice, but apparently accepted it as sufficient; for it sent a representative in response. It must be held that this conduct operated as a waiver. It may be seen that the act of sending

the man in response to the notice naturally had the effect of leading the defendants to believe that strict compliance with the letter of the contract would not be required." See also cases cited in the *McDaniel* case. This disposes of the motion to dismiss the amendment to the original plea and answer.

The fifteen special grounds of the motion for a new trial complain either of the charge given or of the failure to give instructions which were not requested. We have examined these grounds, and hold that none of them discloses reversible error.

We have, at considerable length, undertaken to show the nature of the case and the character of the pleadings. Since the material questions argued under the general grounds of the motion for a new trial have been substantially covered in so far as the law is concerned, we shall advert to those grounds somewhat briefly. There was abundant evidence in the case to warrant the jury in concluding that the machinery was worthless as a ginning outfit, both before and after defendants purchased it. One of the defendants testified that the outfit was worthless, and that he had tendered it back to the plaintiff. There was testimony that the defendants did not ascertain that the machinery was defective and had evidenced these defects when in the hands of the party who had it before defendants got it, or that the plaintiff knew of these defects when it was being operated by said party, until after the suit had been filed. We do not think that the testimony of one of the defendants that they went to Reynolds and casually inspected the machinery when it was not running prior to the time defendants purchased it in any way prejudiced the defense. As already indicated, the defendants' knowledge of the defects "from the beginning" did not of itself necessarily show that the defendants, or either of them, knew of the fraud. In short, we hold that the evidence supports the plea, and that the trial judge did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. Under the pleadings in the case I think that the court erred in overruling the motions of the plaintiff to strike the defendants' plea of failure of consideration and of fraud in the procurement of the contract. And that error rendered the further proceedings in the case nugatory. In my opinion the judgment should be reversed.